# CHARLESTOWN.

WELLS *et als. v.* BOARD OF EDUCATION OF LINCOLN DISTRICT.

Submitted June 19, 1882.—Decided August 19, 1882.

1. If a vote be taken in a school district under sec. 41 ch. 123 Acts of 1872–3 p. 408 or under § 41 ch. 15 Acts of 1881 p. 168, and a majority of the vote is in favor of a specified number of months exceeding four in the year during which the public schools of the district are to be kept open, such vote authorizes and requires the board of education to levy a tax sufficient, with the State's quota, to keep the public schools open for the specified time, but does not authorize them to levy such tax for the succeeding year or for any future year. Nor would they prove such authority by such vote, though at the election of a new board of education in the succeeding May a majority of the voters of the district voted for a school-levy, as such vote would only authorize and require the new board of education to keep open the public schools for four months in each succeeding year, and to make a sufficient levy for that purpose, the levy not exceeding fifty cents on one hundred dollars worth of property in the district. (p. 160–163.)

2. If in such case the newly elected board of education should make a levy to keep the public schools open for a period of more than four months in the year in accordance with the vote taken in the preceding year, such levy is illegal, and upon a petition to supersede it under the Act of 1875 ch. 72 page 153 the circuit court should supersede such levy as made contrary to law. And in superseding it the circuit must supersede and set aside such illegal levy entirely and can not supersede only such portion of it as is sufficient to keep the public schools open for the time exceeding four months. (p. 163.)

3. When a levy made by a school-district is thus superseded, it is the duty of the board of education at once to make a new levy according to law sufficient to keep the public schools open for only four months in the year. This new levy in lieu of an illegal levy, which has been superseded by the circuit court, must be made by the board of education and can not be made by the circuit court, when it supersedes the illegal levy. (p. 164.)

4. But the circuit court has no authority under the Act of 1875 ch. 72 page 153 to supersede such illegal levy, unless the tax-payers file their petition for that purpose within forty days, after such illegal levy has been made. (p. 165–168.)

Writ of error and *supersedeas* to judgments of the circuit court of the county of Tyler, rendered respectively on the 6th day of

September, 1881, and on the 9th day of September, 1881, in an action in said court then pending, wherein Barney Wells and others were plaintiffs, and the Board of Education of Lincoln District were defendants, allowed upon the petition of said Board.

Hon. Thomas J. Stealey, judge of the fourth judicial district, rendered the judgment complained of.

. GREEN, JUDGE, furnishes the following statement of the case:

· On August 22, 1881, Barney Wells and nine others, residents and tax-payers of the Lincoln District in Tyler county, filed their petition in the circuit court of Tyler county praying, that the court which was then in session, would supersede, revoke and annul a levy for the teachers' fund made on July 4, 1881, of forty-five cents on the one hundred dollars valuation of real and personal property. The petition alleged, that this levy was made by a board elected on the third Tuesday in May, 1881, and that this levy was sufficient to maintain the public schools in said district for six months in the year 1881, and was levied for that purpose without any authority, they not having first submitted the question to the voters of this district, whether the schools in this district should be continued for more than four months in the year, as required by the 41st section of ch. 15 of Acts of 1881 p. 188. The petition stated, that in the previous year in August, 1880, an election was held, in which a majority of the votes cast were in favor of continuing the schools of the district for more than four months in that year; and that pursuant to said vote a levy had been made sufficient to continue the free schools for six months in the year 1880.

On September 6, 1881, the Board of Education demurred to this petition, which had then been sworn to, on the ground that the petition did not show what part of said levy was illegal, and the court overruled the demurrer. They then filed their answer, which was sworn to, in which they state, that at the election in August 1880, a majority of the voters authorized a levy for continuing the public schools in said district for six months in the year, and set out facts showing, that this vote was regularly taken pursuant to law. And

they admit, that pursuant to this authority such a levy was made for the year 1880. They further state, that on the third Tuesday in May, 1881, at an election in this district regularly held pursuant to law a majority of the voters had voted "for school levy," as provided in the 2d section of ch. 15, Acts of 1881, p. 169; and by virtue thereof and of the said election and vote of August, 1880, they derived the right to make the levy of forty-five cents on each one hundred dollars worth of property real and personal, which levy they deemed sufficient to keep the free schools of the district open for six months of the year 1881.

On this petition and answer the court on September 6, 1881, decided, that "so much of the levy made by the Board of Education of Lincoln district of the county of Tyler, for the year 1881, as imposed upon the tax-payers of said district as a tax for the purpose of continuing the free schools of said district beyond the period of four months, was illegal, for the reason that the said board had neglected to submit to the voters of the said district the question of continuing the said schools beyond the period of four months, as required by section 41 chapter 15 Acts of the Legislature of West Virginia of 1881." And the court adjudged, "that so much of said levy made by the said Board of Education of Lincoln district, Tyler county, West Virginia, for the purpose of continuing the free schools of said district beyond the period of four months in the year 1881 be and the same was thereby superseded and annulled."

This order was at once on September 6, 1881, served on the board of education of Lincoln district; and on September 9, 1881, during same term the said Board of Education of Lincoln district moved the court to quash this *supersedeas* and order because improvidently granted, and because the application for this order and *supersedeas* was not made within the time prescribed by the statute. But the court after argument overruled this motion and adjudged, that the petitioners, Barney Wells and others, recover from said Board of Education of Lincoln county their costs, which had been expended. To which judgments of the court the said Board of Education obtained a writ of error and *supersedeas* from this Court, &c.

*I. N. McKnight* for plaintiff in error cited 3 Wait's Actions and Defences 721; 42 Ill. 10; 3 Dill. 25; 4 Ala. 262; Acts of 1881, ch. 15 § 40; Sedg. Consti. of Stat. 308; Cool. Tax. 256; 10 La. Ann. 57; 2 Mich. 560; Acts of 1881, ch. 15 § 44; *Id.* ch. 12 § 81; *Id.* ch. 13 § 5; 16 W. Va. 527.

*Bowers & McCoy* for appellees cited Acts 1872–3, ch. 123 § 41; Acts 1881, ch. 15 § 41; *Id.* § 6; Acts 1875, ch. 72.

GREEN, JUDGE, announced the opinion of the court.

The questions involved in this case are, first: When can a board of education of a school district legally levy a tax for the support of free schools in this district for more than four months in the year? Second: If such a tax be illegally levied, what are the remedies, to which the tax-payers may resort, to correct or redress the wrong? And lastly: Within what time, after such wrong is done, must the tax-payers institute the proceedings to correct the wrong?

The members of the board of education of each school district are elected on the third Tuesday in May in each alternate year, the elections being held in the odd years, 1881, for example. At each election a vote is always taken, whether or no the board of education, when elected, shall be authorized to levy a tax sufficient to keep the free schools open for four months in the year, the tax for this purpose however not to exceed fifty cents on the hundred dollars of the value of all the property real and personal in the school district. See Acts of 1881, ch. 15 § 2 and § 40 pages 168, 169 and 188. Formerly the election was held on the second Friday in August in each alternate year; but in the respects above stated the law was formerly what it still is. See Acts of 1872–3, ch. 123 § 2 and § 40 pages 382, 383 and 408. If a majority of the votes at such election are in favor of a school-levy, it is the duty of the board of education to levy such tax for each of the two years, during which they remain in office. But if the majority of the votes are against the school-levy, the board can legally levy such tax for the first year only and they are required at the expiration of the first year to again submit this question to a vote of the people of this district at a special election to be held

just one year after the first election; and they must levy such tax for the second year if a majority of the votes are for the school levy. Otherwise it is illegal for them to levy such tax. See Acts of 1881, ch. 15 § 2 page 169, Acts of 1872–3, ch. 123 § 2 page 384.

The term of office of the board of education of each school district begins on the first day of July; and on the first Monday thereafter, or as soon thereafter as practicable, they are required to meet and decide, whether or not they wish the free schools of their district kept open for more than four months in the year. If they do, they must determine how long they want them kept open; and thereupon they are required to have a special vote to be taken by the voters of their district on the question, whether or no the free schools of their district are to be kept open for a time exceeding four months, which has been agreed upon by the board of education as the time desired. Or even if they should not wish to keep the free schools open for more than four months, yet if asked in writing by more than twenty voters of their district, they are required to submit to a vote the question whether or no the schools shall be kept open for the time specified in the petition of those twenty voters. If in either case a majority of the voters are not for keeping the free schools of the district open for the time specified, exceeding four months, then they are required to levy a tax accordingly; but if a majority of the voters are against keeping the schools open for more than four months in the year, then they cannot levy a tax to keep them open beyond that period of time. See Acts of 1881, ch. 15 § 41, pp. 188 and 189, and Acts of 1872-3, ch. 123 § 41 p. 408, and Acts of 1881, ch. 15 § 6 p. 170.

In the case before us the record shows, that in August, 1880, the voters of Lincoln district in Tyler county by a vote authorized the Board of Education to keep open the free schools of that district for six months in the year and the board of education of Lincoln district then in office accordingly levied a tax for the purpose. On the third Tuesday in May, 1881, a new board of education for this district was elected; and by a vote at that time the majority of the voters by their ballots declared in favor of a school-levy.

This Board of Education of Lincoln district thus elected in May, 1881, regarded themselves as authorized by this vote to levy a tax sufficient to keep open the free schools of this district for six months in the year, the time which had been authorized by the vote in August 1880, when their predecessors were in office; and they accordingly, when they entered upon their term of office, on July 4, 1881, ordered, that the levy for the teachers' fund should be forty-five cents on the hundred dollars valuation of real and personal property, they deciding, that this levy would suffice to keep open the free schools for six months in the year, as they admit in their answer.

The counsel for the appellant urge, that this view of the Board of Education of Lincoln district is correct. To support it they rely on Cooley on Taxation, page 256, where this is stated : "The taxing power once conferred is presumptively continuous and to be exercised again and again, as often as may be required by the exigencies of the government, and as often as may be consistent with the act of delegation." To sustain this *Municipality* v. *Dunn*, 10 La. An. 27 and *Williams* v. *Detroit*, 2 Mich. 560 are cited. The first of these cases I have now no access to ; the second of them certainly furnishes us no aid in determining this question. But Cooley adds to the above statement : "But custom has much to do with the construction of such powers; and sometimes a single exercise must be deemed to exhaust the power for the time being when the custom is to tax but once within a certain period of time, as for instance within the year. And this is the general custom in the case of local taxes." In *Oliver* v. *Carsner*, 39 Texas 396, it was held, that "a school board having a power to levy a tax not exceeding one per cent. in one year, who ordered a tax of less than one per cent., had no power to order a further tax during the year, they having exhausted their power by the first levy."

Now by the very wording of the law then in force, Acts of 1872–73, ch. 123 § 41 page 408, it appears to me, that the Board of Education of Lincoln district by the levy of a tax on the district in 1880, to keep the free schools open for six months, exhausted the power conferred on them by the vote taken in August 1880. First, the law on its face directed

this vote to be taken after the Board of Education had agreed "that the schools of their district should be continued more than four months *in the year*," or if "twenty or more voters ask it in writing," that is, ask that the free schools of the district may be kept open "more than four months *in the year*." It is true on the ballots were only written "for six months school" or "against more than four months school." But it seems to me obvious, that the only meaning, which can be attached to this vote consistent with this act, that is with the "act of delegation," is that the vote was for six months school during the year, in the case before us for six months school during the year 1880. And when a tax for "a six months school" during the year 1880 was levied, the power conferred by this vote was exhausted. That the voters were not and could not be called upon to do more than determine this question for a single year, is further shown by its being expressly provided near the close of the 41st section p. 409, that "only one term of time shall be voted for at any one election."

It would obviously have been inconsistent with this provision for the Board of Education of Lincoln district to have ordered a vote, whether or no the free schools of the district should be kept open for six months during the year 1880 and five months during the year 1881. And, it seems to me, it would have been equally inconsistent with this act to have had a vote taken on the question, whether or no the free schools of Lincoln district should be kept open for six months during the year 1880 and for a like time during the year 1881. The purpose of this act was to permit the voters to authorize the board of education to keep open the public schools for the then year only for more than four months, and to leave it to the voters, who might be living in the district the next year, to determine for how long a time these free schools should then be kept open. It is true, that at the original election of the board of education the voters can by their vote confer on them by one vote the power to keep the free schools of the district open for a period not exceeding four months for two consecutive years. But this seems to be because the Legislature determined, that for the State at large four months was the proper time to keep open the

free schools, unless the people of a school district should in any one year by a vote determine, that they should not be kept open at all or should be kept open for a longer time, the power then to change the time being confined to a single year at a time.

To hold, that a vote for six months' schooling should be construed to  authorizing this six months schooling each year for all time, till by a vote it was changed, would, it seems to me, be a singular construction of this act, as even a four months schooling could not by one vote be established for more than two years, though the law obviously leans in favor of four months schooling making any other time an exception to be approved and adopted only by a specified vote of the people of the district.   And this exception can we think be made only for a single year, so as in no manner to prejudice or embarrass the voters living in a school district during each school-year in fixing the time the free schools are to be kept open for that year in the district.   The judgment of this circuit court shows, that this was its opinion.

The next question is:   What judgment should the circuit court render, when the board of education does illegally levy a tax sufficient to keep the free schools of the district open for six months, when it had authority to make a levy only sufficient to keep them open for four months, in a case when in proper time an application has been made to the circuit court under § 49 of ch. 114 p. 297 of Acts of 1872-3, for a writ of *supersedeas?*  Should the whole levy be set aside and annulled, as illegally made, or should the circuit court itself undertake to correct the illegal levy by reducing it, so as to make it sufficient to keep open the free schools of the district four months only?   It is obvious, that the circuit court was of the opinion, that it was its duty to thus reduce the levy to an amount sufficient to keep the free schools open for four months in the year only.   It seems to me that, this § 49 of ch. 114 of Acts 1872-3 p. 279 shows, that the proper judgment of the circuit court in such a case would be to supersede and annul the illegal levy entirely, and leave it to the board of education to make a legal levy.

This power of ascertaining, what rate of taxation is necessary to raise a fund, which with the State quota shall be suf-

ficient to keep open the free schools of the district, is in its nature legislative and not judicial; and it is conferred on the boards of education of the school districts. It being legislative in its character, the circuit court could not properly exercise it; and indeed the Legislature under our Constitution could confer no such power on the circuit court. But in truth the Legislature has not attempted so to do. This § 49 of ch. 114 provides, that when a writ of *supersedeas* is awarded to a levy made by the county court, "if the court shall on hearing be of opinion, that the order is contrary to law, and reverse the same, the county court may order a levy according to law." The levy in no case is made by the circuit court, but by the county court after the reversal, or it may be made correctly by the county court, even before the circuit court has declared illegal the levy, to which a writ of *supersedeas* has been awarded by the circuit court, as this section expressly declares. By chapter 72 of the Acts of 1875, pp. 153 and 154, this remedy was extended to the case of a school district levying a tax contrary to law; and the circuit court is thereby authorized to *supersede any levy* in like manner; but there is in this act no authority attempted to be given the circuit court to make the proper levy; but it is left to the board of education of the school district "in like manner," as it was left to the county court to make the proper levy, after a levy made contrary to law had been annulled by the circuit court.

It is claimed by the board of education, that in this case the demurrer to the petition should have been sustained, because it did not state, what portion of the levy was in excess of the amount necessary to keep the free schools of the district open for four months in the year. This, it is argued, was necessary to be stated in the petition, because it was claimed, that when in a bill of injunction the complainant concedes the legality and justices of a portion of the tax complained of, but disputes the legality of the rest, he must show by his bill, what portion of the tax is legal, and what portion is illegal, and to support this there is cited *Taylor* v. *Thompson*, 42 Ill. 10; *Parmley* v. *St. Louis &c. R. R. Co.*, 3 D. M. 25; and *Tallassee Manf. Co.* v. *Spiegner*, 49 Ala. 262. But if we were to admit, that the law is there correctly laid down, it would

in no manner justify the conclusion drawn from it.    There is an obvious difference between an injunction to stay a portion of a tax, which is illegal, and which can be enjoined, while the residue of the tax, which is legal, is enforced, and the application for a *supersedeas* to a levy under our statute, where the levy is illegal, and where, as we have seen, the court could not without the exercise of legislative power permit a portion of the tax fixed by the court to be enforced. The statute-law, as we have seen, in the case of a *supersedeas* to levy provides for its *supersedeas* entirely, and remits to the board of education the making of such levy, as they can legally make.    The whole matter of the amount necessary to support the free schools for the time, which by law they are allowed to be kept open, being left to the legislative discretion of the board of education.

It remains for us to enquire, whether or no in this case the circuit court ought to have entertained the petition.    It on its face presented a proper case, as we have seen, for the action of the circuit court; but was it presented to the circuit court within the time required by law? or does the law prescribe any time within which such a petition should be presented?    The illegal levy was made by the Board of Education of Lincoln district in Tyler county on July 4, 1881; and the petition for a *supersedeas* thereof was filed in the circuit court of that county on August 22, 1881, that is, forty-nine days after the illegal levy was made.    The Act of 1872–3 ch. 114 § 49 p. 297 provides, that a writ of *supersedeas* may be allowed by a circuit court to an illegal levy made by a county court; but by this act it can be allowed, only when the petition is filed within forty days after the levy is made.    By chapter 72 of Acts of 1875 pp. 153 and 154 it is provided, "upon the petition of ten tax-payers residing in any city, town or village aggrieved by an unlawful or erroneous levy or imposition of taxes, the circuit court of such county may supersede the levy made by such city, town or village, *in the same manner and to the same effect* as a circuit court may now supersede a levy made by a county court."    It seems to me, that this portion of this act extends to illegal levies made by the authorities of cities, towns and villages the same remedy which by the Act of 1872–3 ch. 114 § 49 page 297 had been

conferred on tax-payers in case of an illegal levy made by a county court, except that the proceedings could be instituted by ten tax-payers instead of twenty-four, as required by this act. When the levy is found to be unlawful in the case of a town levy, it is to be superseded in the same manner and with the like effect, as when under the Act of 1872–3 the levy of a county court is found to be unlawful, and is to be superseded, that is to say, it is to be superseded entirely and not simply corrected or changed by the circuit court; and when it is thus superseded, the town authorities are authorized and required to make the levy in a lawful manner; and the "collecting officer is required upon demand to repay the illegal taxes collected to the several persons, from whom such taxes have been collected; and if he fails to do so, the amount with costs may be recovered of him and his sureties or any one or more of them."

No time is named in the Act of 1875 expressly, within which these proceedings to supersede a town levy are to be commenced; but it seems to me, as the town-authorities, after it is superseded, are to levy the correct tax in a lawful manner, and the town-officer, who has collected the illegal tax, is to refund it to the several tax-payers, it must have been intended, that these proceedings should be promptly instituted; for great inconvenience and injustice would result, if these proceedings were instituted years after the taxes were all collected and expended, and the officer, who collected, had been out of office for years. There is exactly the same necessity and propriety in requiring proceedings, which are to have this *effect,* to be instituted promptly in order to avoid this embarrassment and injustice, when the levy is a town-levy, as when it is a county-levy; and I am of opinion, that the Act of 1875 in declaring, that town-levies unlawfully levied were to be superseded in the *same manner and with the same effect, as county-levies were then superseded,* intended to require, and by its true construction does require, that these proceedings shall be instituted within the same time after the levy is made, as is required by the Act of 1872–3, when the levy is made by a county court, that is, within forty days after the levy is made.

The 72d chapter of Acts of 1875, page 154 further pro-

vides: "In like manner, if an independent school district or any other school district imposes a tax or levy contrary to law, or in excess of the rate of taxation prescribed in the act creating an independent district, for school purposes, upon a like petition the circuit court may supersede the levy." To me it seems clear, that if an illegal tax is levied by any school-districts, under this provision it may be superseded by the circuit court in like manner, as an illegal levy made by a town or by a county court and with the same effect, that is, if so superseded all the tax, which has been illegally levied by the school-district, must be refunded to the tax-payers, of whom it has been collected by the collector, and a proper levy must be made by the board of education of the school-district; and therefore the proceedings must in like manner be instituted within forty days, after the levy is made.

The Act of 1875 likewise provides: "Upon like petition any ordinance of a city, town or village made contrary to law the circuit court may supersede, revoke and annul the same." As no moneys in such case are required to be refunded, and no new ordinance is required to be passed, the reasons, which require such proceedings to be instituted within forty days, seem to have no force; and as the law does not say, that when such ordinance is superseded, *it is to be done in the same manner, and that it is to have the same effect* as when a circuit court supersedes a county levy, it seems to me, that the proceeding to supersede a town-ordinance need not be instituted within forty days, after the ordinance is passed.

So understanding the Act of 1875, it follows, that as the proceedings in this case to supersede the levy of the Board of Education of Lincoln district, Tyler county, were not instituted by the tax-payers, till forty-nine days, after the levy was made, the circuit court had under the Act of 1875 no authority to supersede this levy, and ought not for this reason to have entertained the petition, and having improperly done so, when the case was heard on September 6, 1881, the court ought to have dismissed the petition at the cost of the petitioners.

The order therefore of the circuit court of Tyler county made on September 6, 1881, as well as the order of said court made on September 9, 1881, must be set aside, revoked and

annulled; and the plaintiff in error, the Board of Education of Lincoln district, must recover of the defendants in error, Barney Wells and others, the petitioners in said proceedings in the circuit court, their costs in this court expended; and this court proceeding to render such judgment, as the circuit court of Tyler county should have rendered, doth dismiss the petition of Barney Wells and others and doth adjudge, that the Board of Education of Lincoln district in Tyler county do recover of the said petitioners Barney Wells and others their cost, expended in the circuit court of Tyler county.

THE OTHER JUDGES CONCURRED.

ORDERS REVERSED.

# CHARLESTOWN.

[Submitted June 19, 1882—Decided August 19, 1882.]