# CHARLESTON.

## HANLEY v. COUNTY COURT.

Submitted September 9, 1901.   Decided November 7, 1901.

50   439
e57   169
d57   175

50   439
59   692

1.  COUNTY SEAT—*Relocation—Court House.*

A county court has the authority to determine whether the building of a new court house should be postponed until a vote can be had for the relocation of the county seat and such determination is final and not reviewable by injunction or otherwise, unless such vote has been ordered and is pending, when by proper proceeding the wrongful action of the court will be controlled.   (p. 440).

2.  DEFECTIVE NOTICE—*Special Term.*

A defective notice of the holding of a special term of the county court is not sufficient grounds on which to base an injunction.   (p. 441).

3.  INJUNCTION—*Its Purpose—Dissolution.*

An injunction obtained without just legal grounds for the ostensible purpose of preventing the county court from incurring indebtedness inhibited by section 8, article X, of the Constitution while its real purpose is to aid in the relocation of the county seat, when such purpose is accomplished, should be dissolved and not perpetuated.   (p. 442).

4.  COUNTY COURT—*Levy—Expenditure.*

A county court has the right to appropriate the funds on hand and those to be raised by the levy of the present fiscal year for the purpose of erecting necessary county buildings including a court house, and to enter into contracts with this end in view without thereby creating an indebtedness in violation of section 8, article X, of the Constitution.   (p. 442).

5.  COURT HOUSE—*A Necessity.*

A suitable court house is a paramount public necessity in every county.   (p. 442).

Appeal from Circuit Court, Randolph County.

Bill by James Hanley and others against the Randolph county court and others. Decree for complainants, and John P. Conn, defendant, appeals.

*Reversed.*

E. D. TALBOTT, for appellant.

C. H. SCOTT and C. W. DAILEY, for appellees.

DENT, JUDGE:

John P. Conn appeals from the decree of the circuit court of Randolph County entered on the 12th day of May, 1899, perpetuating an injunction against him and others at the suit of James Hanley, John T. Davis and R. Darden, residents, voters and tax payers of the county.

The bill was ostensibly filed for the purpose of preventing the county court from creating an indebtedness contrary to section 8, Article X, Constitution, while its real purpose plainly apparent was to prevent the erection of a new court house at the town of Beverly, the then county seat, until a vote for relocation thereof at the town of Elkins could be had. This in fact is alleged as one of the grounds for the injunction. It is insufficient, however, for the county court is clothed with the exclusive power to determine whether it will postpone the building of a court house until such vote can be taken and its determination on such question is conclusive and final. It is also urged that the notice of the special meeting of the court was not broad enough to authorize the county court to enter into the contract which it made with the appellant. This also furnishes no sufficient ground for an injunction as it could be reached by the ordinary processes of judicial procedure. The one question involved in this case is as to whether the ostensible object of the bill is well founded.

On the 6th day of June, 1898, the county court entered into a contract with the appellant to build a superstructure for a new court house for the sum of eleven thousand eight hundred and fifty dollars to be paid for as the work progressed out of the funds on hand and the levy for the present fiscal year beginning on the 1st day of June, 1898, and it was expressly stipulated in the contract "the said county court shall not be liable under this contract to pay upon the work aforesaid any sum of money

which shall be in excess of the funds so applicable to the work
to be done," that is to say from the levies already made or the
levy to be made for the current fiscal year. The plaintiffs insist
that this contract is in violation of section 8, Article X, aforesaid,
because it is not to be satisfied out of the funds already in hand,
but is to be included in the levy of 1898. The county court made
its levy for 1898 and as is shown in their estimate included this
sum. Plaintiffs insist that this is the creation of an indebted-
ness, and that the court cannot undertake or contract for any
work for county purposes unless they have the funds already
accumulated to pay the same. That contracts made looking for-
ward to the levy of the fiscal year are plainly inhibited. This is
undoubtedly a very narrow view of the constitutional provision
and such a construction would greatly hamper the county court
in the proper discharge of its duties, especially when unforeseen
contingencies such as the destruction of the county buildings
come to pass. Such a narrow construction the constitution
framers could not possibly have had in mind, for they further
provide for a direct annual tax to pay the interest thereon an-
nually and the indebtedness prohibited in not exceeding thirty-
four years showing evidently that they were not framing an in-
hibition against contracts to be paid from current levies. The
case of *Spilman* v. *Parkersburg,* 35 W. Va. 605, and the cases
therein relied on are not applicable to the present case. They
relate to the first clause of section 8, wherein counties are pro-
hibited from becoming indebted in any manner or for any pur-
pose to an amount including existing indebtedness in the aggre-
gate exceeding five *per centum* of the value of the taxable prop-
erty therein and establish the proposition that when this limit is
reached counties must pay as they go even though it be for
current expenses. There is no question as to such limit having
been reached in this case, but the sole question as to how the
county business shall be conducted where there is no bonded
county indebtedness involved. Shall the county court levy and
wait until the levies are collected before it can contract in relation
thereto, or can it begin to contract as to such levies and provide
for their appropriation and expenditure at the beginning of and
during the fiscal year for which they are levied without wait-
ing until the levy is actually collected and in the hands of the
officer? In the case of *List* v. *Wheeling,* 7 W. Va. 504, this
Court held that, "The said eighth section of the tenth article of

the Constitution was not intended to, and does not in any wise, interfere with or prevent the levying, collecting and expenditure annually, by authority of law, by the proper legal authorities of the several counties, cities, etc., taxes for county, and city, etc., purposes, and to do and cause to be done, whatever is necessary or proper for that purpose, including the making or causing to be made contracts touching the expenditure of the taxes so levied and collected annually and the like."

A contract made during any fiscal year for the expenditure of a portion of the levy of that year is an appropriation of such portion of such levy for such purpose and is not the creation of an indebtedness within the meaning of the Constitution whether such appropriation be made before or after such levy is laid. Such was the conclusion reached by this Court in the case of *Davis* v. *County Court,* 38 W. Va. 104.

The county court may not make a contract to bind the levies of future years because it cannot make the appropriation of such future levies for specific purposes, for over them it is given no control. But over the levy of any present fiscal year it has control and can make an appropriation accordingly and does not thereby create an indebtedness against the county to be carried to future years. The contract with the appellant was to be fully satisfied out of the then present fiscal year and the county's liability was limited to such levy or the funds then on hand. So that it was not the creation of a forbidden indebtedness against the county. It is insisted that the amount of this contract together with the other current liabilities of the county would be largely in excess of any sum the county court is authorized to levy. The contract though in terms relieves the county from all liability for any sum in excess of the levy of 1898, and the funds on hand. So if not paid from such levy the contract would have to go unpaid. And there is no good reason why his contract should be enjoined, any more than any of the other purposes for which such levy was laid. A court house is absolutely necessary for county business and the recordation and preservation of public records and papers. Without it such business cannot be possibly transacted properly. This injunction was not justifiable under the circumstances of this case and was only used as a means to accomplish the removal of the county seat to Elkins. Having accomplished its purpose, it should have been dissolved in so far as the appellant is concerned. By it the appellant's con-

tract except in so far as it was performed prior thereto has been rendered impossible of performance. He is nevertheless entitled to have the decree reversed, the injunction dissolved and the bill dismissed as to him, which is accordingly done.

*Reversed.*