NORFOLK AND WESTERN RAILWAY COMPANY *et al. v.* COUNTY COURT OF MINGO COUNTY, T. B. VARNEY, *President, et al.*

(No. 9201)

Submitted May 20, 1941. Decided June 17, 1941.

*F. M. Rivinus, Joseph M. Crockett* and *W. Broughton Johnston,* for plaintiffs in error.

*Lafe B. Chafin* and *O. C. VanCamp,* for defendant in error.

KENNA, PRESIDENT:

This is a proceeding brought by the Norfolk & Western Railway Company and twenty-three other residents of Mingo County under Code 1931, 11-8-9 (amended and reenacted as Section 22, Acts 2nd Ex. Sess. 1933, Chapter 67; Michie's 1937 Code, 11-8-22) for the purpose of attacking the order of the county court laying the 1939 tax levy for that county, and including therein a special assessment authorized by more than sixty per cent of the voters of Mingo County on the eighteenth day of the

preceding July. The petition was filed in the circuit court on the sixteenth day of September, 1939, and on September eighteenth, an order was entered awarding a writ of supersedeas against the Commissioners of the County Court of Mingo County, the same order directing them to appear to show cause "why part of said levy order of August 15, 1939, as prayed for in said petition, should not be set aside, vacated and annulled." No writ of supersedeas was issued but a copy of the order filing the petition and directing it to issue was served upon the members of the county court.

There was no appearance until the twenty-sixth day of January, 1940, when the individual members of the court filed a plea in abatement setting up the fact that the court as a corporate body had not been made a party defendant.

The county court having been made a party, the respondents appeared apparently in response to the order to show cause, depositions were taken and on May sixth the matter was submitted but not passed upon until the nineteenth day of November, 1940, when the court denied the prayer of the petition.

It will be noted that the petition was submitted on the sixteenth of September, 1939, and its prayer not passed upon until almost fourteen months thereafter. In the meantime, there having been no supersedeas issued, there was no activity of the county court as a fiscal body that was suspended or held in abeyance. The levy order became effective, all of the taxes assessed thereby were put into operation and the usual collections under the assessment were made.

The petition attacks the assessment because the authorization of the special levy in excess of the usual limit was for the purpose of covering an unlawful deficit, and much of the proof relates to the manner in which the deficit covered was acquired, the respondents contending that their estimates of tax receipts were legitimately arrived at, but that the actual collections fell far short due to several reasons that could not be anticipated; and the petitioners contending that the county court

estimated the amount of receipts entirely to conform to the amount of intended expenditures, for many of which there was no justification whatever. In this way, the petition questions an amount in excess of thirty thousand dollars, being the item in the 1939 levy authorized by a special election in order to discharge in three years a pre-existing deficit of something over seventy-six thousand dollars.

We regard it as unnecessary to enter into a full discussion of what may be termed the merits involved in this proceeding, although this record has been scrutinized with some little care, and we do not wish to be understood as commending the practices which we believe were indulged in by the County Court of Mingo County. The court is of the opinion that this decision turns upon a jurisdictional question and that the Circuit Court of Mingo County, in order to exercise the jurisdiction conferred upon it by Code 1931, 11-8-9 (as amended and reenacted as Section 22, Acts 2nd Ex. Sess. 1933, Chapter 67; Michie's 1937 Code, 11-8-22) must go further than merely to enter an order containing the statement that a writ of supersedeas is "allowed on said petition," and must actually issue the writ in order to conform to what we believe is the meaning of the word "supersedeas" as used in the section under consideration.

We think that it is comparatively clear that the legislative purpose in conferring upon twenty-four persons the power by petition to question the validity of levies laid by the various fiscal bodies in this State, but not the right to question a part only of the levies under attack. (*Wells* v. *Board of Education*, 20 W. Va. 157), was to summarily suspend the effectiveness of the levy until the circuit court and, on review, this Court, had an opportunity to consider and pass upon the legality of the levy. Revenue being vital to the continuous exercise of governmental functions and the temporary suspension of the taxing power under the section in question being an extremely critical matter, we believe that the statute is to be strictly construed, particularly with reference to the meaning of the term "a writ of supersedeas" as therein contained. It

confers upon circuit judges a special, statutory and limited jurisdiction which may be exercised in term or vacation, without the formality of maturing the proceeding before final disposition.

Supersedeas is now regarded and generally used as an ancillary process in conjunction with a writ of error. The latter writ brings a certified copy of the record before the reviewing court, but does not suspend the operation of the final judgment. That function is performed by the supersedeas, the order awarding which ordinarily requires the giving of a bond conditioned upon the satisfaction of the judgment before the writ issues. However, due to the fact that our present statute, or its equivalent, was first enacted in the State of Virginia in the Virginia Code of 1819, and since the meaning of a statute is not to be altered by a change in the meaning attached to its terms by popular usage since its enactment, it would seem to be necessary to interpret our present statute in accord with the meaning of the word "supersedeas" at the time of its original enactment, it having been transmitted to us through the Virginia Code of 1849, that being the last enacted codification prior to this State's formation.

The books are not completely in accord and it should be borne in mind that the definitions referred to are in furtherance of a strict construction of the statute before us, due to the fact that procedure under it has the drastic effect of suspending the tax assessments of our fiscal bodies and possibly affecting the exercise of governmental functions.

Going back no further than the Virginia Code of 1819, we believe it may safely be asserted that at that time the writ of supersedeas was an original process of an appellate court, the operation of which was dual, since it brought the record of the proceedings before the appellate court and held in abeyance the effect and operation of the order or judgment of the inferior tribunal. *Lee* v. *Turberville,* 2 Wash. 162; *Burwell* v. *Anderson & Co.,* 2 Wash. 194; *Wingfield* v. *Crenshaw,* 3 Hen. & M. 245; *Williams* v. *Bruffy,* 102 U. S. 248, 26 L. Ed. 135; 1 Robinson's Practice 660. A writ of supersedeas awarded by an order of an

appellate tribunal, but not actually issued, as here, was not the process of the court entering the order any more than an order awarding a *subpoena duces tecum* can be put into effect as process. *Anderson* v. *Lively*, 6 Leigh 77; *Ex Parte Leicester*, 6 Vesey, Jr., 429, 31 Eng. Rep. 1128; *Ex Parte Layton*, 6 Vesey, Jr., 435, 31 Eng. Rep. 1131. That being so where only private litigants are involved, where the activities of a public body are the object of the writ its effect should certainly depend upon its issuance.

Treating our present statute in the light of that definition of the word supersedeas, we are of the opinion that in a summary statutory proceeding questioning the validity of a levy, the actual issuance of a writ of supersedeas is a condition precedent to the reviewing court acquiring jurisdiction. The entire levy must be suspended and a separate part of it cannot be questioned due to the fact that an error affects the whole. Under the statute, the levy, if questioned at all, must be questioned within forty days. If the entire levy is thrown in doubt by the filing of a petition suspending its operation, it is likely that the legislative judgment believed that public concern and the private interests directly and indirectly affected would demand and receive prompt action. The provision of the statute granting fiscal bodies the right to enter a different order of levy after the awarding of the supersedeas accords with the idea that the legislative purpose was to procure promptness and a speedy remedy.

To sum up, in our opinion, the Circuit Court of Mingo County acquired no jurisdiction over the county court under the section in question by the issuance of an order to show cause. That is not within the purview of the act in question. Without a writ of supersedeas, the levy order of the fiscal body is not brought before the circuit court, and the intended function of a hearing upon the petition provided for is operative only directly upon the order of the fiscal body. The effect of the proceeding upon the individual members of that body is only incidental. It is the duty of the circuit court to point out errors and defects, if any, in the order of the fiscal body, and to direct that body to enter a levy order free from the specified

defects. We do not believe it was the legislative purpose to confer upon a circuit judge jurisdiction which controls the validity of a levy order and at the same time to permit that order to remain effective and to all intents and purposes be fully regarded as a valid and lawful levy until the contrary is shown of record in a proceeding pending before the circuit judge. If the effect of the levy is not suspended pending a hearing that would be the consequence.

For the foregoing reasons, we see no error in the order of the Circuit Court of Mingo County dismissing this proceeding, since no writ of supersedeas issued.

*Affirmed.*

ROSE, JUDGE, concurring:

On the merits of this case, I am in full agreement with the views expressed by Judge Fox in his dissenting opinion; but certain insuperable difficulties, in my judgment, render relief to the petitioners at this late date, wholly impracticable. No writ of supersedeas was actually issued. The levy order in question was not superseded, nor in any way placed in abeyance. We must assume that the levy, made August 15, 1939, was perfected in regular course; that the tax books were made up in due time; that the sheriff (who is not a party to this proceeding) has collected the bulk of these taxes and disbursed the same on proper orders from the proper fiscal bodies; and that all unpaid taxes for the year 1939, were returned as delinquent June 30, 1940. What can we now do in June, 1941? Can we now rescind the levy order of August 15, 1939, after it has been fully executed? Can a new and valid levy be made in 1941 for 1939? Can any tax levy be made nunc pro tunc? The taxpayers and the taxable property are not the same. True, the statute, Michie's Code 1937, 11-8-22, provides that "If money is collected under any order which is afterward rescinded or reversed, the collecting officer shall, upon demand, refund any payment to the person from whom it was collected." But the provision would seem to apply only where the

proceeding has been strictly according to the statute, and the levy superseded. The annulment sought, therefore, has become futile. In such a case, relief will be denied, notwithstanding the original merits of petitioners' case. *Tynes* v. *Shore*, 117. W. Va. 355, 185 S. E. 845; *State* v. *Jones*, 81 W. Va. 182, 94 S. E. 120; *Wildasin* v. *Long*, 74 W. Va. 583, 82 S. E. 205; *State* v. *Lambert*, 52 W. Va. 248, 43 S. E. 176; 4 C. J. S., page 1967; 3 Am. Jur., page 308. This rule is especially applicable where a supersedeas could have been, but was not, issued. *Winter* v. *State Road Commission*, 116 W. Va. 200, 179 S. E. 73; *Commercial Credit Co.* v. *Altizer*, 107 W. Va. 365, 148 S. E. 322; *Thornton* v. *Manchester Investment Co.*, 97 Ga. 342, 22 S. E. 987; *Moller* v. *Gottsch*, 107 Ia. 238, 77 N. W. 859.

The relief against an unlawful levy provided for in Michie's Code, 1937, 11-8-22, is plainly intended to be prompt and summary. It is preventive, not curative. It must be awarded, if at all, when the collection of the illegal taxes can be prevented, and while a lawful levy may still be made.

I cannot bring my judgment into concurrence with that of the majority wherein it holds that by reason of the failure to issue and execute the writ of supersedeas, the lower court never acquired jurisdiction of the case. The statute says:

"Within forty days after an order for a levy the circuit court of the county, or the judge in vacation, may allow a writ of supersedeas on the petition of at least twenty-four persons interested in reversing the order."

The statute thus, expressly, confers upon the court the jurisdiction in question upon the presentation of the requisite petition in proper time. In the instant case, there was a petition; it contained all proper matter; it was signed by the statutory number of interested persons; it was presented within the proper time; it was received, ordered filed, and acted upon by the court in the manner in which the statute authorized action. The jurisdiction of the court was properly invoked and responded to. This

was jurisdiction of the subject matter. An ancient case (*Overstreet* v. *Marshall*, 3 Call 192, decided in 1802), concerning a writ of supersedeas, held that the proceeding for the writ was fully commenced by the filing of the petition therefor, and an order allowing the same, though no writ actually issued, the court saying: "The judge's order for a writ of supersedeas, is the true commencement of the proceeding here; * * *." It is difficult to conceive how a proceeding could be "commenced" without the court's having obtained jurisdiction. An enlightening discussion of this question is found in *Schroeder* v. *Mer. & Mechanic's Ins. Co.*, 104 Ill. 71, at page 75. The opinion says:

> "The court acquires jurisdiction of the plaintiff when he applies for its power and assistance to compel the defendant to render him his rights under the law; but this aid must be sought according to prescribed forms, and under our practice that form requires that he file with the clerk of the court a *praecipe* for the process he desires. This is an application, in its nature, to the court to send its process to require the defendant to appear at a subsequent term to defend the action. The court clearly has jurisdiction of the plaintiff when he thus invokes its aid. When he thus submits his person to the court, he, by asking its aid, gives the court jurisdiction over the subject matter in controversy, and confers power to adjudicate and determine his rights thus submitted. In this manner the court becomes possessed of jurisdiction of the person of the plaintiff and of the subject matter, and when so possessed it becomes the duty of the court to commence and carry on the power to bring the defendant into the court, that the case may be heard; and the rights of the parties in the matter thus brought before the court may be judicially and conclusively determined."

In 21 C. J. S. Courts, section 82, the following appears:

> "Jurisdiction of a particular action is acquired by the filing of pleadings which show the case to be within the general class of cases which the

court has jurisdiction to hear and determine, and a petition or complaint which shows this is sufficient to give jurisdiction, although it is defective in other respects."

The court, therefore, obtained jurisdiction of the petitioners and of the subject matter, by the filing and acceptance of the petition. Although the writ of supersedeas was not served on the respondents, nor even issued, they were served with a copy of the order awarding the writ, and directing them to appear and show cause why the prayer of the petition should not be granted. They appeared, without reservation, filed a plea in abatement and an answer; appeared to the taking of the depositions on behalf of the petitioners; filed a stipulation in lieu of evidence on their behalf; argued the case below and here; and, at no time, made claim not to be legally in court. If the notice served was not sufficient process to give the court jurisdiction of the respondents, their unlimited appearances have fully waived the requirement for service of such process.

Whether the instant proceeding be considered original or appellate, the law is the same. In a trial court, service of process is waived by a general appearance. *Blue* v. *Poling,* 68 W. Va. 547, 70 S. E. 279; *Giboney* v. *Cooper,* 57 W. Va. 74, 49 S. E. 939; *Pennsylvania Railroad Co.* v. *Rogers,* 52 W. Va. 450, 44 S. E. 300, 62 L. R. A. 178; *Frank* v. *Zeigler,* 46 W. Va. 614, 33 S. E. 761; *Groves* v. *County Court,* 42 W. Va. 587, 26 S. E. 460; *Totten* v. *Nighbert,* 41 W. Va. 800, 24 S. E. 627; *Wandling* v. *Straw,* 25 W. Va. 692. A general appearance in an appellate court likewise makes service of process unnecessary. In a case in this Court, upon appeal, it was held that service of process on the appellee was waived by a general appearance of counsel on his behalf. *Dent* v. *Pickens,* 61 W. Va. 488, 58 S. E. 1029. We applied the same rule in *William F. Mosser Co.* v. *John Barton Payne, etc.,* 92 W. Va. 41, 114 S. E. 365, here on writ of error, where proper process was, not only not served but, in fact, never issued. No reason appears why the rule applied to appeals and writs of error should not prevail where the review is by super-

sedeas. Our practice in this regard seems to be that followed generally. 4 C. J. S., page 1088.

For the foregoing reasons, alone, I join with the majority in affirming the action of the Circuit Court of Mingo County in refusing to set aside the levy involved herein.

Fox, JUDGE, dissenting:

This is a case which involves questions of public policy, and the interpretation and application of constitutional provisions, all of vital importance to the people of the state, and to every county, school district and municipality within its borders. I regard as unfortunate the fact that the decision of the majority is based entirely on jurisdictional questions not going to the merits of the controversy. Therefore, this dissent.

This case represents the first frontal attack on Section 1, Article X of the Constitution, known as the Tax Limitation Amendment. If once the bars are lowered so that levying bodies may be permitted, by one device or another, to cover up violations of law in the expenditure of public funds, by paying illegally issued orders or other obligations out of levies of future years, then any hope of ultimate limitation of levies is a myth, and the long struggle for control of public expenditures will have been lost. This may seem strong language, but I believe the situation before us justifies its use.

Here, we have a case where, so far as outward appearances go, the county court proceeded within the provisions of the Constitution. Section 1, Article X does provide that a levying body may, over a period of three years, and with the approval of sixty per cent of the voters, increase levies beyond the authorized rate, not to exceed fifty per cent thereof. But when we look into the matter, we find that, in violation of law, the county court had, prior to June 30, 1939, and over a period of about three years, exceeded the expenditures which its revenues and income justified to the extent of $85,794.01. On June 19, 1939, the court estimated this deficit at $76,000.00, made up of outstanding warrants, $46,000.00; bills payable, $8,500.00;

and sheriff's overdraft in the general county fund of $21,500.00. There was no concealment of the court's purpose, and it is embodied in its own records.

I do not think it important to trace in detail the methods by which this unfortunate situation developed, but this much may be said: the court grossly over-estimated prospective receipts other than tax levies, and this year after year, ignoring the experience of former years which furnished a safe guide; it under-estimated outstanding orders issued by it, and of which it obviously had knowledge; completely ignored unpaid bills it had contracted; from year to year it exceeded the budget allowances of various county officials; and altogether conducted the fiscal affairs of the county in an improvident and reckless manner, with the result that at the beginning of the 1939-40 fiscal year, the accumulated indebtedness had exceeded fifty per cent of all revenues which could be raised annually under authorized levies. To meet this situation, resort was had to the provision of Section 1, Article X, which reads:

> "* * * and the legislature shall further provide by general law, for increasing the maximum rates, authorized to be fixed, by the different levying bodies upon all classes of property, by submitting the question to the voters of the taxing units affected, but no increase shall be effective unless at least sixty per cent of the qualified voters shall favor such increase, and such increase shall not continue for a longer period than three years at any one time, and shall never exceed by more than fifty per cent the maximum rate herein provided and prescribed by law; * * *."

We are, therefore, met with the question of whether, under this provision, accumulated indebtedness can be provided for.

It may be that the nature of the indebtedness should be taken into consideration. Conceivably some great emergency could be used to justify a payment of obligations incurred in one year out of the levies of a future

year. Casual deficits will frequently occur, and what I shall say is not intended to apply to such deficits. But here, I see no reason for the existing situation, and I contend that every dollar of the deficit undertaken to be paid by the increased levies is illegal indebtedness. Let us examine the statute. Code, 11-8-25, 31.

Section 25:

"Boards or officers expending funds derived from the levying of taxes shall expend the funds only for the purposes for which they were raised."

Section 26:

"A local fiscal body shall not expend money or incur obligations:

(1) In an unauthorized manner;

(2) For an unauthorized purpose;

(3) In excess of the amount allocated to the fund in the levy order;

(4) In excess of the funds available for current expenses."

Section 27:

"Any indebtedness created, contract made, or order or draft issued in violation of sections twenty-five and/or twenty-six of this article shall be void."

Sections 28 to 31 provide penalties, pecuniary and criminal for violations of the sections quoted. When the legislature said that a fiscal body should not "expend money or incur obligations * * * in excess of the amount allocated to the fund in the levy order * * *" or "in excess of the fund available for current expenses," it made it legally impossible for any fiscal body to make a contract, or issue an order or warrant, which the revenues of the current year would not cover. That was the plain purpose of the legislature, and it was not contemplated that

a time should ever come when it would be necessary to use the increased levy provisions of Section 1, Article X for any purpose other than to increase future expenditures. I am unwilling to ascribe to the people of the state, by whose vote this provision was adopted, any intent to invite violation of law by their public servants, such as would inevitably result from the use of this provision to cover indebtedness illegally incurred.

Furthermore, many decisions of this Court hold that under similar statutes the intent is clear to require fiscal boards to limit their expenditures and their obligations to the means available within the current fiscal year. *Davis* v. *Board,* 38 W. Va. 382, 18 S. E. 588; *Honaker* v. *Board,* 42 W. Va. 170, 124 S. E. 544; 32 L. R. A. 413, 57 Am. St. Rep. 847; *Hanley* v. *County Court,* 50 W. Va. 439, 40 S. E. 389; *Lawson* v. *County Court,* 80 W. Va. 612, 92 S. E. 786; *Campe* v. *Board,* 95 W. Va. 536, 121 S. E. 735; *Shonk Land Co.* v. *Joachim,* 96 W. Va. 708, 123 S. E. 444; *Huddleston* v. *County Court,* 98 W. Va. 706, 128 S. E. 925; *Swiger* v. *Board,* 107 W. Va. 173, 147 S. E. 708. The "pay-as-you-go" principle in public expenditures is, in theory, deeply imbedded in the minds of our people, and grows out of the unfortunate experience of the mother state. It is embodied in our Constitution. Sections 4 and 6, Article X limit the power of the state to become indebted either directly or by the assumption of the debt of another; Section 7 of Article X limits the levies which county authorities may lay, and Section 8 prohibits the incurring of any debt by a county, city, school district or municipal corporation in any manner or for any purpose except by a vote of the people, and even the right of the people to vote an indebtedness is limited as to amount. Some thirty-five years ago, the legislature began in earnest the task of curbing unlawful expenditures. Patiently and consistently it has pursued its task, sometimes with discouraging results, for mounting taxes finally brought about the present system whereby property is classified for tax purposes, and levies limited. Then to implement this reform, and as necessary to insure its success, the statutes which I have quoted above were enacted. In view of this

record of constitutional restrictions, legislative enactments and court decisions, I assert that the declared public policy of this state, at the date of the adoption of the Tax Limitation Amendment, was to require all fiscal bodies to limit expenditures to resources available within the current fiscal year. If this be true, then it follows that the provisions of Section 1 of Article X authorizing increased levies by a vote of the people was inserted with that public policy in mind. And here it should be stated that Section 1 of Article X of the Constitution, having been adopted by a vote of the people, became binding on the people themselves until, in the manner constitutionally provided, they should decide to change the same. If increased levies to cover past indebtedness are not authorized under that section, then a vote thereon gives no power to the county court to lay such levies.

I have not failed to consider the contention that the record does not specifically show what part of the indebtedness making up the deficit was illegally incurred. It may be that some of the outstanding orders, and those paid by the sheriff in creating the overdraft in the general county fund, were issued at a time when funds were available or potentially available within the current fiscal year, for their payment. It can hardly be that they are all within that class. I do not think this possible and even probable situation should be allowed to control our decision. The handling of a county budget must cover the entire fiscal year. At the beginning of each year an estimate of receipts and expenditures is made up, and, barring extraordinary occurrences, such estimate should closely approximate actual receipts and expenditures. Therefore, the county court knows, within reasonable limits, just what fund it has or will have available for expenditures. It knows, also, that some expenditures will certainly be required, such as salaries of county officials, expenses of the courts, assistance in county offices, feeding prisoners, expenses of elections, and many other items which might be mentioned. It knows that these expenditures will be required to be made in each month of the fiscal year, the last month to the same extent as the first. Knowing all

this, a county court is not justified in expending the fund available for the whole year in the first few months of that year, and then, in violation of law, continue to issue warrants and contract for expenditures, when it knows the fund available for the entire year has been exhausted, and endeavor to meet the situation thus created by the contention that salaries must be paid, prisoners fed, court expenses provided for, and other mandatory expenses of government met. If such a situation, and it is the usual one, is allowed to control, then there is no way by which expenditures can be effectually curbed. I do not believe it should control us. I think we are warranted in holding all classes of indebtedness which accumulates under this system as illegal. It is true that innocent people may be prejudiced, but the legislature has attempted to provide for this when it imposed personal liability on members of fiscal bodies who violate the law in this regard. It may be that this provision is not adequate, but it is not possible to provide for all contingencies resulting from any type of wrongdoing. We can only administer the law as we find it, carry out established policies, and let consequences fall where they may. No law can be administered without resulting injustice in some instances.

I would therefore hold that the County Court of Mingo County was without constitutional power, under Section 1, Article X of the Constitution, and under the election held thereunder, to lay the additional levies which this proceeding seeks to supersede, on the ground that the additional levies provided for in said section can only be laid to cover expenditures within the fiscal years in which they may be imposed.

These views are not stated with any understanding on my part that the majority disagrees with them in their entirety. On the contrary, while not undertaking to speak for it, I understand that but for the procedural question, and some others, the majority, in the main, concurs. I further understand the majority view to be that, even conceding the correctness of the position I have taken on the merits, it should not control the case. On this point, I find myself in disagreement with my associates.

This proceeding is instituted under section 22, Chapter 67, Acts of Legislature, 2nd Ex. Sess., 1933, which reads:

"Within forty days after an order for a levy the circuit court of the county, or the judge in vacation, may allow a writ of supersedeas on the petition of at least twenty-four persons interested in reversing the order. The levying body, without awaiting the final decision, may rescind the order, and impose a new levy. If the court, on the hearing, finds that the order is contrary to law and reverses the order, the levying body shall impose a levy according to law. If money is collected under any order which is afterward rescinded or reversed, the collecting officer shall upon demand, refund any payment to the person from whom it was collected. If the collecting officer fail to repay the amount, he and his sureties shall be jointly and severally liable for the amount and the costs of recovery. Recovery may be had by summons before a justice or on motion in the circuit court."

Upon the filing of the petition provided for, the statute provides that the circuit court "may allow a writ of supersedeas." Of course, the supersedeas is to the levy which is the subject of the complaint. When the petition was filed in the case at bar, the court did the exact thing which the statute said it might do, it "allowed" the supersedeas. In my judgment, when it did so it acquired statutory jurisdiction of the proceeding, with full power to render such decision as the developments of the case might warrant. The technical issuance of any further writ or process was, in my opinion, unnecessary to give the circuit court a jurisdiction it already had. As a matter of fact the circuit court did assume jurisdiction, a copy of its order allowing the supersedeas was served on the county court members, and they later appeared and interposed pleas and answers to the petition. It may be that an allowance of a supersedeas is not, technically, equivalent to the issuance of the writ, but in this statutory proceeding where, as I believe, the parties treated the court order as the supersedeas referred to in the statute,

and litigated the matter on that basis, I can well imagine the surprise of the litigants involved when they learn that they never had a case in court. I do not think the case at bar justifies such a holding. My deference to established rules of procedure does not carry me to the extent to which the majority seems willing to go. I see in the case before us a question of the greatest importance, calling for a decision on its merits. There can be no question of due process. There has been notice and a hearing. It is not, in my judgment, a case calling for a rigid application of technical rules of procedure.

A reading of the statute will disclose that after the allowance of the supersedeas, the levying body "without awaiting the final decision, may rescind the order and impose a new levy." This, to my mind, means that the mere allowance of the supersedeas operates to give the levying body power to undo its act. It could hardly have any effect unless based on jurisdiction. Then, too, without requiring more, it is clear that upon the allowance of the writ, a hearing and final decision is contemplated. This final decision may be delayed; by reason of delay or otherwise taxes may be collected, because provision is made for a refund of taxes paid under any levy order which is afterwards rescinded or reversed. The whole tenor of the statute convinces me that the filing of the petition gives to the circuit court jurisdiction of the controversy, and that the allowance of the writ of supersedeas, as was done in this case, sets in motion all proceedings necessary to a final decision.

It may be said that there has been undue delay in reaching a decision, and this is true. Due to the character of the case there should have been an early hearing and a prompt decision. But the petitioners filed their petition within the period prescribed by the statute, and there is nothing in the record convicting them of being responsible for the delay. This being true, I do not think the delay, with resulting confusion, whatever it may be, should be laid at their door. Nor am I impressed with the argument, though not urged in the majority opinion, that, on account of the lapse of time, and the confusion

which may result from a reversal of the decision of the lower court, we can do nothing at this time. Such an attitude toward plain violations of constitutional and statutory law will encourage, though unintentionally, their repetition in the future. Under the majority holding, ways will always be found, through delays and otherwise, to make relief in a sense impractical, and any escape from the consequences of law evasions and violations, in effect, made impossible. The petitioners having filed their protest against the levies in question, and in the manner and within the time provided by law, are entitled to have this Court vindicate their right to have the law obeyed by their public servants. We are not at this time concerned with the consequences which may result from our decision. In my opinion, we should say that this levy was illegal and void, and the mere fact that difficulties may be encountered in working out the details necessary to place matters in *statu quo*, if that be possible, should not be considered by us. That is the problem of those who, in the first instance, violated the law, and those who through possible neglect in enforcing their rights may have placed themselves in a condition where it is impossible to give complete relief. It is our duty to settle the principles of law involved, and that the majority opinion fails to do, apparently on the ground, primarily, that matters have so drifted along as to render any adequate relief impossible. That is the attitude of the defeatist, and I am unable to concur therein.

Being of the opinion that the levies sought to be superseded were illegally laid, I would reverse the circuit court and remand the case.