INHABITANTS OF WATERVILLE *vs.* ASHER H. BARTON *et als.*

*Proper mode of procedure under R. S., c. 18, § 28.*

This case involves an application of the well-settled rules that inferior courts of limited jurisdiction are responsible in trespass to those whom their acts in excess of their jurisdiction injuriously affect; and that an officer executing their process, when the want of jurisdiction is apparent upon its face (but not otherwise) is equally liable.

County commissioners who have appointed an agent to contract for the building of a bridge, part of a way, under R. S., c. 18, § 28, have no right to issue a warrant of distress to collect of the delinquent town the cost of its construction upon the day following that designated in their order appointing such agent and in the contract for the completion of the work, although it is actually done and the accounts of disbursements therefor allowed, upon notice, more than thirty days before the warrant issued. For the seizure of property upon a warrant so issued, the county commissioners, will be liable in trespass, as would the officer making the seizure, if such defect appeared upon its face.

As the section referred to (R. S., c. 18, § 28) provides that a certificate shall be sent to the town, forthwith after the making of the contract stating the time agreed upon for the completion of the work, and contemplates the allowance of the accounts to be made, and the liability of the town to accrue, after such completion, the contractor, agent, and commissioners cannot hasten the day of payment by hurrying up the work.

No warrant of distress should issue till the expiration of thirty days, at least, after the day designated in the contract for the completion of the work; nor (by R. S., c. 78, § 15) till twenty days after notice of their judgment certified by the clerk of the county commissioners to the assessors of the town.

A warrant of distress returnable (as executions are) in ninety days, instead of three months, as required by law, is fatally defective, no protection to the officer serving it, and renders those issuing it liable as trespassers for directing its enforcement.

There is no authority for the county commissioners to render judgment in favor of themselves for expenditures thus incurred; nor for costs *eo nomine*, in such a case. It is the agent's account which is allowed, and for his benefit that the warrant of distress issues.

The warrant should issue for the sum allowed by the county commissioners, after notice, upon the agent's account, and for his expenses of superintending the work, &c.

The computation of interest from the time the account was actually allowed (March 29, 1871,) instead of from the day named for the completion of the work, (May 1, 1871,) was erroneous and exacted from the plaintiffs more

than they were liable to pay. The warrant therefore issued for too large a sum; which defect is fatal. Interest should have been computed from May 1, 1871, under R. S., c. 78, § 15.

If the county commissioners erred in assessing the expense of the agent's superintendency upon only one of the two towns connected by the bridge, this was a judicial error, for which they would not be liable as trespassers.

ON REPORT.

TRESPASS, for breaking and entering the plaintiff's close in Waterville, being their town poor farm, and taking and carrying away certain animals. The third count was *de bonis*, for taking and carrying off the beasts.

This litigation resulted from the controversy relative to the rebuilding of a bridge across the Kennebec, between Waterville and Winslow, swept away by a freshet in October, 1869, and which a majority of the inhabitants of the former town did not wish to rebuild. See *Waterville* v. *Co. Com'rs*, 59 Maine, 86. By an act approved January 21, 1870, c. 282, the county commissioners were authorized to locate a way and free bridge between these towns, the one destroyed having been subject to toll.

A very large number of the citizens of the county petitioned the county commissioners to lay out such a way, which they did, after notice and hearing; and, under the authority to apportion the expense, conferred by said act, they directed the cost of construction and maintenance of the bridge to be borne by Waterville and Winslow in proportion to their respective state valuations; and it was "further ordered, that the said towns of Waterville and Winslow shall have until the sixteenth day of May, 1870, to contract for the erection of said bridge, and until the first day of May, 1871, to complete the same;" notice of the commissioners' report and orders to be served upon the towns eighteen days before May 16, 1870.

Neither of the towns acting in the matter, several of their citizens, original petitioners for the bridge, applied to the commissioners, on the seventeenth day of May, 1870, for the appointment of an agent to contract for and supervise its construction under the special act aforesaid. The prayer of this petition, after

Waterville v. Barton.

notice and hearing thereon, was granted and George A. Phillips was appointed such agent on the twenty-sixth day of May, 1870, and "required to complete the same, and make the same passable on or before the first day of May next, the expense of which shall not exceed $30,000." Upon the sixteenth day of June, 1870, the contract was made accordingly. It was approved by the commissioners and the towns ordered to be notified of their respective proportions of the expense (viz: Waterville, $24,060.68, and Winslow, $5,939,32,) on the same day; which notice was served June 25, 1870. The agent reported to the county commissioners March 6, 1871, that the bridge was completed and accepted; and, upon the following day, the board ordered notice to the towns that the agent had filed his account and that the same would be settled March 29, 1871, which notice was served upon the towns March 20, 1871.

March 29, 1871, the agent was allowed one hundred and sixty dollars for his services and expenses; a claim for extra expenditures by the contractors was rejected; and the contract price allowed; and the account thus settled, and the report accepted and recorded.

Upon the second day of May, 1871,. the county commissioners issued this warrant of distress:—

"STATE OF MAINE.

KENNEBEC, ss.

[L. S.]    To the sheriff of our county of Kennebec, or either of his deputies,                                    GREETING.

Whereas, by the consideration of our county commissioners, holden at Augusta, within and for our county of Kennebec, on the 29th day of March, A. D., 1871, we recovered judgment against the town of Waterville, in said county of Kennebec, for the sum of twenty-four thousand and sixty dollars and sixty-eight cents debt, and one hundred ninety-three dollars and eighty cents for costs in the same suit expended, as to us appears of record, whereof execution remains to be done:

We command you therefore, that by distress and sale of the

Waterville v. Barton.

money, goods or estate of the said town of Waterville within your precinct, you cause to be levied and paid unto our treasurer of our county of Kennebec, the aforesaid sums, amounting in the whole to the sum of twenty-four thousand two hundred and fifty-four dollars and forty-eight cents, and interest thereon from said 29th day of March, 1871, together with twenty-five cents more for this writ, and thereof also to satisfy yourself for your own fees.

Hereof fail not, and make return of this writ, with your doings therein, into the clerk's office of our said county commissioners in our county of Kennebec aforesaid, within three months from the date hereof.

Witness, Mark Rollins, junior, Asbury Young, and Nathaniel Gray, county commissioners, at Augusta, this second day of May, in the year of our Lord one thousand eight hundred and seventy-one.                    Wm. M. Stratton, clerk."

(Endorsed.) "Mem.—February 12th, 1872. The county treasurer received of the town of Waterville the sum of $24,254.48, leaving due at that date the interest, $1,281.55. Alias issued, June 10, 1872."

At an adjourned meeting of the board of county commissioners. held March 26, 1872, they directed their clerk to notify Waterville that the accrued interest, amounting to $1,281.55 was still due upon the judgment above described, and that a warrant of distress would. issue in twenty days unless this sum was before then paid. This notice was given the next day after the order passed. The town failing to respond a distress warrant similar to the above, *mutatis mutandis*, (as to amount, &c.,) issued June 10, 1872. This precept was put into the hands of Asher H. Barton sheriff of the county, who executed it August 5, 1872, by seizing certain live stock on the plaintiffs' poor farm and selling the same August 12, 1872. For this he and the county commissioners were sued in this action, which was reported to the full court for its determination. The damages, if any, are to be assessed at *nisi prius* by the justice there presiding.

*D. D. Stewart* for the plaintiffs.

He who seizes another's property, and he who directs the seizure, must show legal authority, strictly sufficient, or they will alike be held liable as trespassers. *Coffin* v. *Field*, 7 Cush., 358; *Woodbridge* v. *Conner*, 49 Maine, 353; *Emerson* v. *Washington Co.*, 9 Maine, 98; *Sumner* v. *Co. Com'rs*, 37 Maine, 115.

The defects pointed out by counsel, and held fatal by the court, appear in the opinion, which indicates the line of argument pursued.

*A. Libbey* for the defendants.

The writ contains three counts. The first and second are trespass *quare clausum*, and the third is for taking plaintiffs' personal property described therein. I · suppose it will not be contended that the county commissioners can he held under the first or second count, nor that the sheriff can if the warrant is a protection to him. The action cannot be maintained under the third count.

I. The county commissioners had jurisdiction over the subject matter out of which the warrant of distress grew. *Waterville, pet'rs*, v. *Co. Com'rs*, 59 Maine, 86.

The warrant of distress was regular on its face, disclosed no want of jurisdiction in the county commissioners, and is a protection to the sheriff, Mr. Barton. *Whipple* v. *Kent*, 2 Gray, 410; *Thurston* v. *Adams*, 41 Maine, 419; *Gray* v. *Kimball*, 42 Maine, 299.

II. The other defendants, the county commissioners, are not liable. The amount of the liability of Waterville became fixed by the commissioners March 29, 1871. It remained unpaid for more than thirty days. A warrant of distress was duly issued May 2, 1871, R. S., c. 18, § 28.

On this warrant the plaintiffs paid $24,254.48, February 12, 1872; all but the interest and twenty-five cents for the warrant. They had full notice of the amount due. This was not a satisfaction of the judgment. The judgment against the plaintiffs for their part of their expense of opening the way, bore interest from the time the amount was fixed, March 29, 1871. R. S., c. 78, § 15.

The second warrant was properly issued for the collection of the balance due.

III. If not authorized by the statute, the determination that the judgment bore interest was a judicial question over which the commissioners had jurisdiction, and if they erred they are not liable in this suit. *Tyler* v. *Alford*, 38 Maine, 530 ; *Noxon* v. *Hill*, 2 Allen, 215; *Pratt* v. *Gardner*, 2 Cush., 63 ; *Piper* v. *Pearson*, 2 Gray, 120.

If the warrant in this case should be found irregular, then it is important to the parties that the court decide the main question, whether interest can be recovered. When this question is settled, the parties will have no difficulty in making a settlement.

BARROWS, J. This is an action of trespass *quare clausum* brought by the town of Waterville against the sheriff and county commissioners of Kennebec county for going upon plaintiffs' town farm and seizing and selling certain stock and swine belonging to the plaintiffs.

The defendants set up in justification a warrant of distress issued by said commissioners June 10, 1872, and served by said sheriff August 5, 1872, which is the trespass complained of.

We start with the well settled rules that inferior courts of limited jurisdiction are responsible in trespass to those whom their acts affect, when they act without, or in excess of their jurisdiction, and not otherwise. *Pratt* v. *Gardner*, 2 Cush., 63 ; *Piper* v. *Pearson*, 2 Gray, 120 ; and that the officer who executes their process does not subject himself to an action unless the want or excess of jurisdiction appears upon the face of the process. *Whipple* v. *Kent*, 2 Gray, 410; *Thurston* v. *Adams*, 41 Maine, 419 ; *Gray* v. *Kimball*, 42 Maine, 299.

We are to inquire whether any, and if any which, of the numerous objections urged by the learned and diligent counsel of the plaintiffs against the sufficiency of the record and process relied on by the defendants as a justification, can prevail. In addition to their general jurisdiction the commissioners of Kennebec county were specially empowered by Special Laws of 1870, c. 282, § 1,

to lay out the highway, out of the construction of which this controversy has arisen. By the same act in § 2, it is provided that "the existing laws in relation to the laying out of highways shall govern them in their proceedings, except that there shall be no appeal from their decision in laying out or refusing to lay out such highway;" and that the return of the commissioners may be made at any adjourned session and entered of record at once; in § 3, that if the commissioners shall determine to lay it out they shall also determine the proportion of the expense of erecting and maintaining the bridge, to be borne by each of the towns of Waterville and Winslow which is to be in proportion to their respective state valuations; in § 4, authority is given to the selectmen of the two towns to contract for the erection of the bridge jointly, each town to be liable for its proportion of the expense and no more.

Section 5 provides as follows: "If the selectmen of said towns fail to contract for the erection of the bridge within such time as the commissioners shall fix, the commissioners shall proceed in the manner provided in section twenty-seven of chap. eighteen of the Revised Statutes."

The records show a regular laying out of the highway upon proceedings in conformity with existing laws entered of record at the April session, 1870; an adjudication by the commissioners in accordance with the special act, of the proportions which each town should bear of the expense of the erection of the bridge, and an order under § 5, that the towns should have until the sixteenth day of May, 1870, to contract for the erection of the bridge; and a further order that they should have until the first day of May, 1871, to complete it. The records further show that at a session of the commissioners held May 17, 1870, a petition for the appointment of an agent to build the bridge, alleging the failure of the towns to contract for its erection within the time fixed by the commissioners as above, was presented, of the pendency of which petition the plaintiffs were duly notified and on the twenty-sixth day of May, 1870, upon proof of the facts therein alleged, the commissioners appointed an agent to contract for

the building of the bridge, requiring him to complete and open it on or before May 1, 1871, at an expense not exceeding thirty thousand dollars, the plans and specifications to be filed with the clerk of the courts together with the contract, and the contract not to be binding unless approved by the commissioners, and thereafterwards the agent to be paid for his services, and the contractor for building the bridge, in the manner prescribed by "the statutes in such cases made and provided."

In pursuance of this authority on the sixteenth day of June, 1870, the agent contracted with certain parties for the erection of the bridge for $30,000, according to plans and specifications which were duly filed, and with the contract approved by the commissioners. On the same day the commissioners issued a notice to the assessors of the two towns of the appointment of the agent— of the terms of the contract into which he had entered—of the time when it was to be completed, and of the amount which each town would be required to pay therefor (Waterville's part being $24,060.68) which was duly served a few days later. On the twenty-ninth day of March, 1871, after the completion and acceptance of the work, and due notice to the towns of the presentment of the agent's account for allowance, the commissioners allowed the contract price and $160 for the services and expenses of the agent, and rejected a claim of $2,336.34 for extra work and materials, and ordered their adjudication to be recorded. On the second day of May, 1871, they issued a warrant of distress against the plaintiffs addressed to the sheriff and his deputies, the preamble of which runs thus: "Whereas by the consideration of our county commissioners holden at Augusta within and for our county of Kennebec on the twenty-ninth day of March, A. D. 1871, we recovered judgment against the town of Waterville in said county of Kennebec for the sum of twenty-four thousand and sixty dollars and sixty-eight cents debt, and one hundred and ninety-three dollars and eighty cents for costs, in the same suit expended, as to us appears of record, whereof execution remains to be done."

To this preamble they appended a command to the sheriff to

"cause to be levied and paid unto our treasurer of our county of Kennebec the aforesaid sums, amounting, &c., and interest thereon from said twenty-ninth day of March, 1871, together with twenty-five cents more for this writ, and thereof also to satisfy yourself for your own fees" and to make return within three months from the date.

By a memorandum indorsed upon this warrant it appears that the plaintiffs paid to the county treasurer February 12, 1872, the sum of $24,254.48.

At a session of the commissioners March 26, 1872, the clerk was ordered to notify the assessors of Waterville that the sum of $1,281.55 was still due as accrued interest on this judgment and to issue a warrant of distress for the collection of the same if not paid in twenty days after such notice. He gave such notice by mail the following day and on June 10, 1872, issued a second warrant of distress running against the inhabitants of Waterville and setting forth the recovery of the judgment March 29, 1871, for debt and costs as in the preamble to the previous warrant, except that the original sum is stated to have been "expended by said county in erecting the bridge from Waterville to Winslow," and that "execution remains to be done in part namely for $1,281.55 and interest thereon from February 12, 1872 ;" which sum and interest the sheriff is commanded by distress and sale of the money, goods, or estate of said inhabitants to cause to be paid to the county treasurer together with fifty cents for the two warrants.

It was in the service of this warrant that the sheriff did the acts here complained of.

The proposition with which the plaintiffs start, that the commissioners had no authority to appoint an agent to build the bridge until the full time had elapsed which they had assigned to the towns as the term within which it was to be completed, while according to the general course of proceeding in such cases it would be correct, is not, we think, maintainable here.

Special powers were conferred by the act of January 21, 1870, c. 282, and, to determine their extent, the whole of the act is to be

construed so as to give effect to all its provisions. *Holbrook* v. *Holbrook*, 1 Pick., 250, 258.

To do this it is plain that the direction in § 2, that "the existing laws in relation to the laying out of highways shall govern them in their proceedings" is not to be so construed as to preclude them from acting under the special power conferred. That direction was doubtless designed to warn the commissioners that in the exercise of the power conferred on them by the special act, they were not at liberty to dispense with the petition, notices, hearing, and allowance of damages which were required by existing laws. This court had so held in the case of the *City of Belfast, appellants*, 53 Maine, 436, 437.

But the clear and explicit language of the legislature in §§ 3 and 5, of chap. 282, laws of 1870, forbids the conclusion that the proceedings of the commissioners throughout and in all contingencies were to be governed by the existing general laws. The general laws authorize no such apportionment of the expense and give no such power to the commissioners to fix a time within which the towns shall contract for the erection of the bridge, or to proceed in the manner provided in § 27, c. 18, R. S. of 1857, if the towns fail to contract, as is here distinctly conferred.

The obvious design and effect of § 5, is to empower the commissioners to appoint an agent and secure the prompt construction of the bridge in case the towns should fail to contract for its erection within such time as the commissioners might fix, instead of waiting as plaintiffs' counsel now contend they should have done until the further time fixed for its completion by the towns should elapse.

The mandate of § 5, is not, as plaintiffs' counsel assumes, to proceed at such time as is prescribed in § 27, but "in the manner" therein provided. The commissioners were justified in proceeding when, and as they did after notice to the town, upon petition of those interested, to cause the work to be done by an agent not one of themselves. That agent made his written contract for the work and filed a copy of it in the clerk's office and the commis-

sioners certified to the assessors of Waterville the time when the contract was to be completed and the amount to be paid therefor.

So far the proceedings of the commissioners were warranted by the authority which the act confers upon them, and if they had continued throughout to proceed in the manner provided in § 27, c. 18, R. S. of 1857, which is identical with § 28, c. 18, R. S. of 1871, the plaintiffs would have had no just cause of complaint.

But our attention has been called to some irregularities in these proceedings which we deem fatal to the defendants' justification. The commissioners did not proceed in the manner prescribed in said § 27, when they issued the first warrant of distress May 2, 1871, the next day after the one fixed for the completion of the contract.

It is not in the power of the agent appointed or the party with whom he contracts, by finishing his work and procuring the allowance of his accounts within the time fixed for the completion of the contract, to hasten the day of payment. The town is to be notified when the contract is made, of the time fixed for its completion. We think the true construction of the statute is that the liability of the town to pay accrues only at the expiration of the time so fixed, although the sum due under the contract and for the expenses of the agent may have been previously ascertained, and that no warrant of distress can lawfully issue unless the town neglects to pay for thirty days thereafterwards. Moreover in R. S. of 1857, c. 78, § 19, (re-enacted in R. S., of 1871, c. 78, § 15,) it is provided that "no warrant of distress shall be originally issued against a town until twenty days after a certificate of the rendition of the judgment is transmitted by their clerk to the assessors of such town." So far as appears this provision was disregarded when the original warrant was issued.

The time when process to enforce a judgment shall issue is not a matter of judicial discretion, and a magistrate issuing it prematurely is liable in trespass. *Briggs* v. *Wardwell*, 10 Mass., 356.

There were other irregularities. The warrant was made returnable in three months instead of ninety days as the statute re-

quires. The periods are not identical. The word month means a calendar month. R. S., c. 1, § 1, clause XI. It is not for us to assume that the legislature had no substantial reason for making such warrants returnable within a different period from that assigned for the return of executions. *Stet lex pro ratione ;* and as long as it stands it must be heedfully regarded.

The warrant of distress refers to a judgment which "we" have recovered for a certain sum of money "expended by said county in erecting the bridge from Waterville to Winslow" and requires that sum with additional sums called "costs" to be levied and "paid unto our treasurer of our county of Kennebec."

There is no statute giving the commissioners authority to render judgment in favor of themselves for expenditures thus incurred, or for costs, *eo nomine*, in such a case.

The county of Kennebec was never liable for the contract price of the work or for the agent's services and expenses. *Emerson* v. *Washington Co.*, 9 Maine, 98.

It was the town whose delinquency made the expenditure of money under the direction of an agent necessary, alone, that was liable for the costs of the work and the expenses and services of the agent. It was the agent's accounts which were allowed. It was for his use and benefit that the warrant of distress was to issue.

And it was to issue for such amount as the commissioners might allow on the settlement of his accounts, after notice to the town, for sums expended on the work, and "expenses of the agent for superintendence and for procuring the allowance of his account."

The commissioners had no authority to render any judgment except for the sums which they might so allow, and it should run in favor of the agent and not in favor of themselves or the county which they represent, and the order in the warrant to levy for debt and costs (how made up does not appear) was irregular and void. If the omission to enter upon the record a formal and proper judgment against the town for the amount thus expended to build the bridge, might be attributed to the clerk, as in *Sumner* v. *Co. Com'rs*, 37 Maine, 123, still the issuing of a war-

rant of distress for costs as well as debt, was illegal and affords no protection to the tribunal issuing or the officer serving it. Most of these defects and errors attach also to the alias warrant under which the defendants claim to justify, appear upon its face, and must be deemed fatal to the defence. And they are not all mere matters of form. The plaintiffs were thereby ordered to pay in interest and costs more than they were legally liable to pay.

It was suggested at the argument that should the proceedings be found irregular, it was still desirable that the court should determine whether interest was recoverable, with a view to settle all questions between the parties without further litigation.

We have therefore examined the question and see no reason to doubt that under the last clause of c. 78, § 15, R. S., of 1871, which is a transcript of R. S., of 1857, c. 78, § 19, interest would be recoverable on such sum as the commissioners allowed upon the accounts of Mr. Phillips for the amount expended in the construction of the bridge, and for his services in superintending the same and his expenses in procuring the allowance of the accounts, from and after the first day of May, 1871. At that date the time for the completion of the contract had expired. The contract had been in fact completed, and the accounts had been allowed, after notice to the town. The sum thus allowed was payable at that time and the thirty days neglect of the town to pay under their legal liability then commenced.

The fact that the original warrant was wrongfully issued before the expiration of the thirty days, and without the twenty days notice from the clerk, can make no difference in the obligation of the town to pay interest from the time when they were in default.

Nor do we see any force in the plaintiffs' objection that nothing could be allowed to the agent for the construction of the bridge, because he had in fact paid out nothing, and by the terms of the contract with those who did the work, was not to be responsible personally to them, they assuming the risk and delay incident to collecting of the reluctant town through legal process. The expenditure had been made and under the direction of the agent law-

fully appointed by the commissioners, because the town neglected its duty in the premises. And the payment of the expense thus incurred could properly be enforced by warrant of distress for the benefit of whom it might concern in the name of the agent. The allowance of the agent's accounts by the commissioners after due notice to the town, was tantamount to a judgment against the town the record of which may be extended if deficient.

But the commissioners had no authority to render judgment for costs or for interest for a time prior to the term fixed for the completion of the contract.

The complaint of the plaintiffs that the commissioners laid upon them the burden of all the expenses of the agent for superintendence if well founded in fact, could not avail the plaintiffs in this suit ; for that, even if it were erroneous and unjust, would be but an error in the exercise of a judicial function. It may be that the commissioners were satisfied that the necessity for the appointment of an agent arose wholly out of the recusancy of Waterville, and therefore the whole expense would be but their due proportion.

But whether they were right or wrong, it is only for ministerial acts not warranted by their general jurisdiction nor the special act, that we hold the commissioners responsible here. As some of those errors appear upon the face of the process which they gave the sheriff to serve, he must be held responsible with them. According to the agreement in the report, the damages are to be assessed by the judge at *nisi prius*.          *Defendants defaulted.*

APPLETON, C. J., WALTON, DANFORTH and VIRGIN, JJ., concurred.