## CHARLESTON.

STATE ex rel. J. A. HUDDLESTON v. COUNTY COURT OF · McDOWELL COUNTY.

(No. 5180.)

Submitted October 14, 1924.    Decided December 30, 1924.

1. COUNTIES—*Warrant on Sheriff Payable to and Endorsed by County Clerk Held by Another Under Agreement to Present It for Payment Out of Proceeds of Taxes for Succeeding Fiscal Year Not a Valid Claim Against County.*

Under sec. 8, Art. X, Constitution, and sec. 12, ch. 28-a, Code, relative to the incurring of debts by county courts, one who advances money to a county court clerk on the latter's representation ·that it is ʼto be used for county purposes, and who obtains as evidence of such indebtedness a warrant for the amount of the loan drawn on the sheriff, payable to and indorsed by the county clerk, and agrees to hold it and present it to the sheriff for payment out of the proceeds of the taxes for the succeeding fiscal year, can have no valid claim against the county on the warrant.   (p. 710.)

2. CLAIMS—*Assignee of Non-Negotiable Illegal Claim Occupies Same ʼStatus as Assignor.*

· The assignee of a non-negotiable illegal claim can stand on no higher ground than the assignor, and he is entitled to no more consideration, even though the assignment be for value.   (p. 711.)

MILLER and LITZ, JUDGES, absent.

Petition by J. A. Huddleston (now deceased·) in the case of State ex rel. J. A. Huddleston, administrator, against the County Court of McDowell· County.  Peremptory writ denied and petition dismissed.

*Writ denied.*

*Strother, Sale, Curd & Tucker,* for relator.

*G. L. Counts, Joseph M. Crockett* and *Fred O. Blue,* for respondent.

HATCHER, JUDGE:

On June 24, 1924, a petition was presented to this court by J. A. Huddleston (now deceased) wherein it was alleged that on June 8, 1920, the county court of McDowell County having authorized the same, an order on the sheriff of said county was drawn in favor of W. W. Whyte for the sum of $25,000, payable out of County Road Class B fund, which order was signed by H. N. Eavenson, who was the president of the said court and by W. W. Whyte who was then its clerk; that on the 9th day of June, Whyte indorsed and sold the said county order to petitioner for $25,000, which was then paid by petitioner in good faith, relying upon the validity of said order; that in 1924 petitioner presented the said order to the sheriff of said county, who not only refused payment, but also refused to indorse on the order ''presented for payment,'' etc.; that in June, 1924, and subsequent to the said presentation to the sheriff, petitioner presented the order to the said county court with the demand that it provide for its payment out of its next county levy, and that such demand was refused.  The petition then prayed for an alternative writ of mandamus returnable July 1, 1924, commanding the county court to provide for the payment of the order or show cause why they should not do so.

The alternative writ was issued as prayed for, and on July 1, the answer of the county court was filed, which stated:

That the said court did not authorize the issuance of the said order on June 8, 1920, or at any other time, out of the County Road Class B fund or any other fund or appropriation and that there was not due to W. W. Whyte on that date or at any other time any bond, note, claim, salary or debt, in payment whereof the order would be issued;

That the court was not in session on June 8, 1920, and that it did not then or at any other time by its President, H. N. Eavenson, sign a warrant for $25,000 payable to W. W. Whyte, out of Class B Road fund or any other fund or appropriation, that H. N. Eavenson did not then or at any other time sign such warrant, and that there was no stub in the

County Road Class B Fund Warrant Book, showing the issuance of any warrant for any such amount to W. W. Whyte.

The depositions of the members of the county court in June, 1920, were taken, which fully support the statements in respondent's answer. Mr. Eavenson, while admitting his signature to the order, denied "signing it on that warrant to W. W. Whyte." He stated he had no idea how his signature was secured, but was positive he did not sign the warrant as it is now. He further stated that McDowell County was never indebted to Mr. Whyte in any manner except for his salary as clerk. He admitted the possibility of Mr. Whyte having had him sign a check in blank, but had no recollection of ever having done so. There is no evidence to the contrary. Mr. Whyte died suddenly in May, 1924.

If the warrant was altered or filled in contrary to instructions after. Mr. Eavenson signed it, and before it was purchased by the petitioner, then the relator could have no higher rights to enforce its payment than Mr. Whyte would have had. This order was not a negotiable instrument.

> "Such orders as these have, except in few cases, been held by courts not as notes or evidences of debt importing promises to pay, on which actions could be maintained, but only as vouchers for disbursing officers and as guides to direct their disbursements." *Ratliff* v. *County Court,* 33 W. Va. 94, 10 S. E. 28.

> "The assignee of a non-negotiable illegal claim can stand on no higher ground than the assignor, and he is entitled to no more consideration even though its assignment be for value." *Davis* v. *County Court,* 38 W. Va. 104, 18 S. E. 373.

Consequently, the fact that Mr. Huddleston purchased the order in good faith and for value would not entitle the relator to enforce payment.

By affidavit made June 27, 1924, and filed with this case the petitioner made an explanation of how he secured the order in question somewhat variant to his petition, as follows:

> "The affiant further says that on the 9th day of June, 1920, W. W. Whyte, Clerk of said Court, came to him at his place of residence in Excelsior and

stated to him that the said county court and the
County of McDowell were in need of funds for road
purposes and had authorized the issuance of a county
order on the treasury of said county for the sum of
Twenty-five Thousand ($25,000) Dollars, and had
authorized and directed him to secure and obtain
the money on said order.   The said W. W. Whyte
then exhibited to the affiant the said order, dated
June 8, 1920, payable to the order of W. W. Whyte
for Twenty-five Thousand Dollars, and signed H. N.
Eavenson, President, W. W. Whyte, Clerk, and en-
dorsed the same, and requested the affiant to give
him the money thereon for the benefit of said Court
and said County of McDowell, stating to the affiant
that the said County order would be paid to him in
the fall of that year when the taxes for that year
were due and payable, and out of the levies made.
The said order is hereto attached and made a part
of this affidavit.

"Affiant further says that he made and issued to
said W. W. Whyte on said 9th day of June his
check on the Berwind Bank in payment of said
order so assigned to him by said W. W. Whyte, which
check was dated the 9th day of June, 1920, and was
for the sum of Twenty-four Thousand Dollars
($24,000.00), the sum of One Thousand Dollars
($1000.00) being deducted from the amount of said
order as and for interest, or advanced interest, on
said amount until the same would be paid as stated
by the said W. W. Whyte, which said check was
duly and promptly paid upon presentation by said
Berwind Bank, and the said check, with its endorse-
ments thereon, is herewith filed as part of this
affidavit.''

Counsel for relator cite authorities holding that municipali-
ties can not only borrow money, but can borrow through
agents and though a warrant may be void, if the county re-
ceived the money it is estopped to deny its liability.   But
none of these authorities are West Virginia decisions, and
are not applicable to the facts in this case.   It is conclusively
proven that neither the respondent nor McDowell County
ever received any part whatsoever of the $24,000 paid for
this order, but, on the contrary, that every dollar of it was
expended by Mr. Whyte for his own private purposes.

The explanation of Mr. Huddleston gives him no point of vantage. The members of the county court unanimously state that they never authorized Mr. Whyte to negotiate a loan with Mr. Huddleston. But, for the sake or argument, say that they did; then, according to Mr. Huddleston, he made a loan to respondent on June 9, 1920, which he admitted was not to have been paid until "in the fall." In other words, he accepted from respondent an obligation not payable out of the levy for the current fiscal year, and which the respondent was expressly forbidden by statute to make. Barnes' Code, 1923, ch. 28-A, sec. 12.

Under the Constitution a county court can not contract a debt except when authorized by a vote of the people. Art. 10, sec. 8. There is no contention in this case that this so-called indebtedness of McDowell County had first been submitted to a vote of the people and received three-fifths of all votes cast.

Referring to this provision of the Constitution, Judge DENT said in *Davis* v. *County Court, supra*:

> "Every citizen, high or low, learned or unlearned, is bound to take notice of and abide by all its provisions, and he can not enjoy the protection, privileges and immunities it affords and then be heard to plead ignorance of its inhabitations. They who deal with the county authorities are charged with notice that such authorities are limited in their expenditures to the annual income derived from their power to levy taxes annually, and must make their contracts accordingly. To hold otherwise would place it in the power of such authorities to evade the constitutional limitation and bankrupt every county in the state."

Our decisions have rigidly upheld the Constitutional and Legislative limitations hedging in the authority of county courts to contract debts. We inherit from Virginia the policy "to keep the counties out of debt, to compel them to pay as they go, and to charge the county revenues of each year with its own burdens." *Bank* v. *County*, 28 W. Va. 273.

Judge DENT reiterates the principle in *Hanley* v. *County Court*, 50 W. Va. 439, 40 S. E. 389:

> "The county court may not make a contract to
> bind the levies of future years, * * * for over them it
> is given no control."

In *Lawson* v. *County Court,* 80 W. Va. 612, 92 S. E. 786,
Judge POFFENBARGER most carefully and patiently explained
that debts as such could not be contracted by county courts
except upon a vote of the people. "The Constitution fixes
that unalterably in the discretion and control of the people."

Judge LIVELY thundered the same principles in *Shonk Land
Company* v. *Joachim,* 96 W. Va. 708, 123, S. E. 444:

> "The contracts under consideration were illegal
> and void, made expressly so by the statute and can
> not be enforced. The legislature has deemed it wise
> to so declare in order that levies may not be antici-
> pated; floating indebtedness passed on to future
> years bringing about former chaotic conditions in
> fiscal affairs, and to insure that the fiscal bodies
> named in the statute shall have at their disposal
> funds to meet their contracts and obligations in the
> fiscal year when the obligations were incurred or the
> contracts made. Necessity and inconvenience will not
> justify the bending or breaking of the law." See
> accord: *Dempsey* v. *Board of Education,* 40 W. Va.
> 99, 20 S. E. 811.

No theory of this case based on law and the evidence
sustains the relator's demand.

The peremptory writ will be denied and the petition dis-
missed.

*Writ denied.*