STATE *ex rel.* BOONE NATIONAL BANK OF MADISON *v.* JESSE MANNS *et al.*

(CC 683)

Submitted February 22, 1944. Decided March 21, 1944.

Fox and Lovins, Judges, dissenting.

*H. W. B. Mullins* and *H. G. Shaffer*, for plaintiff.
*Sam Silverstein*, for defendant.

Rose, President:

The Circuit Court of Lincoln County has certified to this Court the questions of law arising upon the overruling of a demurrer filed by one of the defendants in an action of debt pending in that county of the State of West Virginia suing for the use and benefit of the Boone National Bank of Madison against the members of the County Court of Lincoln County, the sureties on their official bonds and another. The facts as shown by the declaration and as necessary to be considered here may be briefly summarized.

The defendant, Jesse Manns, R. Sias and Elza Vickers were Commissioners of the County Court of Lincoln County. The defendant, The Accident and Casualty In-

surance Company of Winterthur, Switzerland, was surety on the official bond of Manns; the defendant, Standard Accident Insurance Company, on that of Sias; and the defendant, National Surety Corporation of New York, on that of Vickers. The defendant, J. H. Pelfrey was the payee and assignor of a certain order directed to the Sheriff of Lincoln County for $2250.00, issued by the said county court and now owned by the Boone National Bank of Madison.

On the 7th day of October, 1940, the said county court, with all members present and acting together, approved and allowed the claim of Pelfrey for $2250.00, for which an order on the sheriff of the county was issued on December 2, 1940, signed by Manns, as president of the court, and by the clerk thereof, payable to the order of said Pelfrey "out of general county fund". This order was in purported payment for repairs to the court house of the county made by Pelfrey, pursuant to a contract between him and said county court, entered into on the 7th day of October, 1940. No sum for such repairs was included in the estimate or levy for the year 1940, nor was there at any time any balance from preceding years available for that purpose.

On the 21st day of December, 1940, Pelfrey "by writing his name across the back thereof" assigned the said order to the Boone National Bank of Madison, receiving therefor the face value of the order. Subsequently, the bank presented the order for payment to the Sheriff of Lincoln County, who refused payment thereof on the ground that the order was illegal and void.

It is claimed by the plaintiff that the making of said contract for the repairs to the court house and the issuing of the order in payment thereof constitute a breach of the official duties of the commissioners of the county court and of the conditions of their official bonds, thereby rendering them, and each of them, and the sureties on their respective bonds, liable to the bank, as the holder for value in due course and without notice of any infirmity

in said order, for the amount thereof with interest thereon.

The defendant, National Surety Corporation, filed a demurrer to the declaration, assigning eight grounds, which was overruled. The certificate to this Court is in blanket form covering all questions raised or arising upon the demurrer, but only those briefed here will be considered.

The Boone National Bank of Madison is not a "holder in due course" or an innocent purchaser for value without notice of the infirmities of the order in question. That order was not a negotiable instrument, but a mere voucher to the sheriff as treasurer and disbursing officer of the county court. *Huddleston* v. *County Court of McDowell County*, 98 W. Va. 706, 128 S. E. 925; *Shinn* v. *Board of Education*, 39 W. Va. 497, 20 S. E. 604; *Davis* v. *County Court of Wayne County*, 38 W. Va. 104, 18 S. E. 373; *Ratliff* v. *County Court*, 33 W. Va. 94, 10 S. E. 28. Moreover, this order bore on its face the limitation that it was payable "out of general county fund". An order for the payment of money out of a particular fund is not negotiable. Code, 46-1-3. This order and any other claim which Pelfrey may have had, however, were assignable. *Doss* v. *O'Toole*, 80 W. Va. 46, 92 S. E. 139. As assignee of Pelfrey, however, the bank must stand precisely as he stood, subject to be defeated by any fact or law that would have defeated him.

The contract made and the order issued by the county court being obligations in excess of the levy for the current year and all funds available for the discharge thereof were expressly inhibited by statute. "A local fiscal body shall not expend money or incur obligations: * * * (3) In excess of the amount allocated to the fund in the levy order; (4) In excess of the funds available for current expenses." Acts of Legislature, Regular Session 1933, Chapter 38, Article 8, Section 20, as amended by Acts of 1933 Second Extraordinary Session, Chapter 67, Article 8, Section 26. "Any indebtedness created, contract made, or order or draft issued in violation of sections twenty-five and/or twenty-six of this article shall be void." Acts of Legis-

lature, Second Extraordinary Session 1933, Chapter 67, Article 8, Section 27. It is platitudinous to remark that no action can be predicated upon a contract of any kind or in any form which is expressly forbidden by law or otherwise void. Any recovery in this case must be based on something other than this contract and order, or any part thereof.

The bank would find a sufficient basis for its action in the breach of their official duties by the commissioners in making the contract for the repairs, and in issuing the order in purported payment thereof.

Courts have long had to deal with this proposition, and are in substantial agreement in their conclusions. No public officer is liable to one dealing with him for the ill-performance of an official act, if he is legally vested with discretion, or must use his own judgment, as to the manner or method of performing such act. Judicial and legislative officers are, accordingly, ordinarily immune from such liability, and are not even required to give bond. Other officers in performing acts which involve official discretion likewise incur no personal liability in the absence of fraud. This principle is announced in many old cases: *Kendall* v. *Stokes*, 3 How. (U. S.) 87, 11 L. Ed. 506; *Fausler* v. *Parsons*, 6 W. Va. 486; *Bevard* v. *Hoffman*, 18 Md. 479; *Burton* v. *Fulton*, 49 Pa. 151; *Waterville* v. *Barton*, 64 Me. 321; *East River Gas-Light Co.* v. *Donnelly*, 93 N. Y. 557. A multitude of subsequent cases do not depart substantially from this principle.

A corollary to this rule is that a public officer is not liable on a contract in excess of his power, in the absence of fraud, a special assumption of liability, or a statute creating specifically such liability. This principle finds frequent expression in text books and encyclopedias. For instance, 46 Corpus Juris, under the head of "Officers" at Section 332, has this statement: "Nor, unless he sustained other relations toward the transaction than those existing by virtue of his official character, will an officer be held liable on a contract made by him in behalf of the govern-

mental body which he represents, because he has acted in excess of his legal authority since, such authority being fixed by law, those who deal with him are bound to know it." And in 2 McQuillan on Municipal Corporations, Second Edition, Section 560, in discussing officials of municipal corporations specifically, this general statement is found: "Ordinarily, however, when an officer or public agent contracts in good faith with parties having knowledge of the extent of his authority or who have equal means of knowledge, especially where the authority of the officer is prescribed by law, he will not become individually responsible unless the intent to incur liability is clearly expressed, although it should be found that, through ignorance of the law, he may have exceeded his authority."

In the case of *Coberly* v. *Gainer*, 69 W. Va. 699, 72 S. E. 790, we recognized and followed this rule. That action was for the price of certain books sold to the board of Education in 1904 to be paid for from funds to be levied in 1905. The contract was therefore void. The seller brought action against the members of the board individually. This Court said: "That said contract was made by the board of education in its official capacity, and, notwithstanding it was in excess of authority, the law then in force imposed no individual liability on account thereof"; and, "In the absence of a statute imposing individual liability upon a public officer for attempting to create a public debt in excess of his authority, he cannot be held personally liable therefor, except upon his agreement."

Moreover, Pelfrey participated in the illegal things done by the commissioners. He was chargeable with full knowledge of the illegal contract and order. *Doss* v. *O'Toole*, *supra*. How could one who cooperated with the members of the county court in the doing of an unlawful act, knowing that it was forbidden by statute, be entertained in court to recover losses therefrom from those who acted with him in the making of the unlawful contract?

It is true that the case of *Coberly* v. *Gainer, supra,* involved no official bond, members of the board of education not being required to give such bond. But an official bond does not create, or increase, a public officer's liability: it merely secures the liability of such officer already existing. The bond of a member of a county court is by statute required to be "conditioned upon the faithful discharge by the principal of the duties of his office or employment, and upon accounting for and paying over, as required by law, all moneys which may come into his possession by virtue of the office or employment." Code, 6-2-3. While the bond executed by this demurrant is not in these precise words, nothing added to or omitted from the bond actually executed makes the obligation either more or less. *Hatfield* v. *Cruise,* 120 W. Va. 16, 197 S. E. 23; *City of Charleston* v. *Dawson,* 85 W. Va. 353, 101 S. E. 728; *State ex rel. U. S. School Furniture Co.* v. *McGuire,* 46 W. Va. 328; 33 S. E. 313. It required no bond to create the duty of the demurrant's principal to discharge faithfully the duties of his office. To this duty all public officers are bound inherently. Their oath of office, whether or not they give bond, so obligates them. Constitution, Article IV, Section 5. The surety on an officer's bond is liable only as the officer is liable. Hence, the principle pronounced in *Coberly* v. *Gainer, supra,* is also applicable to an officer giving bond, and to the sureties on such bond; and, since no fraud is pleaded against the members of the court in this case, and no undertaking to perform the contract individually is shown, any liability of the demurring surety must be created by some existing special statutory provision.

Prior to 1908 there was no such statute, but, by Section 9 of Chapter 9 of the Acts of the Legislature of that year is was provided:

> "It shall be unlawful for any county court, board of education, or council of a municipal corporation, or other body charged with the administration of the fiscal affairs of any county,

school district or independent district, or municipality, to expend any money or to incur any obligation or indebtedness which such tribunal is not expressly authorized by law to expend or to incur. Nor shall any such tribunal make any contract, express or implied, the performance of which, in whole or in part, would involve the expenditure of money in excess of funds legally at the disposal of such tribunal, issue or authorize to be issued any certificate, order or other evidence of indebtedness which cannot be paid out of the levy for the current year or out of the fund against which it is issued. Nor shall any such tribunal attempt to lay any levy the rate whereof shall exceed the rate specified by this act.

"Any member of any such tribunal, or any officer or person, who in violation of any of the provisions of this act shall expend any money, or incur any debt or obligation, or make or participate in the making of any such contract, or be party thereto in any official capacity, or issue or cause to be issued any such certificate, order or other evidence of indebtedness, or lay or cause to be laid any levy or levies, shall be personally liable therefor, both jointly and severally, and an action may be maintained therefor by the state, or by any county, municipal corporation, district or person prejudiced thereby, in any court of competent jurisdiction; and any such member, officer or person shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined not more than five hundred dollars, or be confined in jail not more than one year, or be both fined and imprisoned; and in addition thereto shall forfeit his office. Whenever any court of competent jurisdiction by *mandamus*, injunction or other judicial proceeding, shall determine that any officer or person has wilfully violated any of the provisions of this section, it shall enter an order declaring the office of such officer or person forfeited."

These provisions of the Code were reenacted by Section 9, Chapter 85 of the Acts of 1915; by Section 12, Chapter

126 in 1919; and by Section 13, Article 8 of Chapter 11 of the Code, 1931. But by Chapter 38 of the Acts of the Legislature, Regular Session, 1933, this statutory provision was so amended as to omit therefrom the provision for liability of members of a fiscal body, and other officials, except for unlawful expenditures of money. This amending act is entitled

> "AN ACT to amend sections one to fifteen, inclusive, article eight, chapter eleven of the code of West Virginia, one thousand nine hundred thirty-one, by substituting therefor, sections one to twenty-six, inclusive, relating to tax levies."

The enacting clause is: "That sections one to fifteen, inclusive, article eight, chapter eleven of the code of West Virginia, one thousand nine hundred thirty-one, be amended to read as follows:". There can be no question but that this act wholly displaced the statute in its earlier form. *State v. Sine,* 91 W. Va. 608, 114 S. E. 150; *State v. Vendetta,* 86 W. Va. 186, 103 S. E. 53; *State v. Harden,* 62 W. Va. 313, 58 S. E. 715, 60 S. E. 394. A further amendment was made by Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933. Under said last amendment and as the statute now stands, Section 25 requires funds derived from taxes to be expended "only for the purpose for which they were raised". Section 26 forbids the expenditure of money or the incurring of obligations "(3) In excess of the amount allocated to the fund in the levy order; (4) In excess of the funds available for current expenses". Section 27 provides that "Any indebtedness created, contract made, or order or draft issued in violation of sections twenty-five and/or twenty-six of this article shall be void." Section 28 requires that upon the violation of sections 25 or 26 "suit shall be instituted by the prosecuting attorney of the county, or the attorney general of the state, in a court of competent jurisdiction to recover the money expended or to cancel the obligation, or both." Sections 29 and 30 provide that "A person who in his official

capacity wilfully participates in the violation of sections twenty-five and/or twenty-six of this article shall be personally liable, jointly and severally, for the amount illegally expended" and may be proceeded against by the "political subdivision concerned, a taxpayer of the subdivision, the state tax commissioner or a person prejudiced", for the recovery thereof.

Thus there was eliminated completely from this statute the provision for personal liability of an officer, who should "incur any debt or obligation, or make or participate in the making of such contract, or be a party thereto in any official capacity, or issue or cause to be issued any such certificate, order or other evidence of indebtedness." There survives no personal liability under this statute except for "illegal expenditure", and in this case there has been no such expenditure.

What consideration led the legislature to eliminate this personal liability of the members of fiscal bodies we cannot, and need not, know. Nevertheless, we cannot but reflect that under the law as it was before this amendment of the statute, one dealing with fiscal bodies or other public officials and knowing, constructively or actually, that his contract was forbidden by statute, could act with impunity, being assured that he could collect thereon either from the public or from the officials individually and from the sureties on their bonds. It was thus made profitable for him to induce the making of such illegal contracts. This could not make for public honesty. As the law now stands the officers who create an illegal indebtedness are liable to fine, imprisonment and removal from office, Acts of Legislature Second Extraordinary Session 1933, Chapter 67, Article 8, Section 31, while their coviolator of the law is left without remedy for any loss which he shall sustain, a situation which does not appear wholly inequitable.

As no fraud is alleged against the defendant commissioners, and as there is no pretense that they expressly or by implication pledged their personal credit to the

contractor Pelfrey, we consider that the demurrer of the defendant National Surety Corporation must be sustained. The other grounds of the demurrer thus become immaterial.

The questions whether the declaration shows liability on the part of the defendant Pelfrey under the principle announced in *Houston* v. *Lawhead,* 116 W. Va. 652, 182 S. E. 780, and whether there is a misjoinder of parties defendant under the rule laid down in *State ex rel. Shenandoah Valley National Bank* v. *Hiett,* 123 W. Va. 739, 17 S. E. 2d 878, are not raised or decided.

Without further discussion of the other questions which may be considered as arising on said demurrer, the action of the trial court in overruling the same is reversed.

*Reversed.*

Fox, JUDGE, dissenting:

I find myself unable to concur in the result reached by the majority in this case. That result, as I view it, gives to faithless public officials *carte blanche* to impose on and defraud citizens who deal with them in their public relations. Of course, my associates can have no sympathy for such result, but it is, nevertheless, inescapable. My dissent rests, in a large part, on my reluctance to join in a statement of the law which, in my opinion, will be hereafter used to excuse practices not in harmony with honest government. Naturally, if the law permits such practices, my personal disapproval thereof is of no consequence; but I happen to believe that the law affords a remedy for those who are prejudiced thereby.

I agree that the plaintiff in this case is not a holder in due course; and that it stands in no better position than its assignor, Pelfrey, would have stood, had he retained ownership of the county order in question.

The defendant members of the county court each gave an official bond, the conditions of which require the

faithful discharge of the duties of their office. They each took an oath to faithfully perform the duties of their office. Their bonds so given, stood, and were intended to stand, as a protection to those who might otherwise suffer from the consequences of the violation of their oath of office, and the condition of their bonds. Code, 6-2-17, provides that upon bonds payable to the State of West Virginia, suits may be prosecuted, in the name of the State, for the benefit of any county, district, corporation or person injured, by a breach of the condition of any such bond, until damages are recovered in an aggregate equal to the penalty of the bond. Sections 25 and 26 of Article 8, Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, specifically prohibits the expenditure of public funds for purposes other than those for which they were raised; or in any unauthorized manner; or for an unauthorized purpose; or in excess of amounts allocated for such purpose in the levy order; or in excess of the funds available for current purposes. The County Court of Lincoln County, and each member thereof, violated this statute in every particular. I contend that in so doing, they violated their oath of office, and breached the conditions of their respective official bonds. Why require an official bond if it may be breached without danger of liability? Why provide, as Code, 6-2-17, does, that any person injured may sue on the bond, and then deny recovery thereon for a plain breach? As I view the matter, Code, 6-2-17, and the provisions of Chapter 67 aforesaid, are not repugnant. The first provides for suits where the conditions of a bond are breached, and the second, in effect, defines what constitutes a particular breach.

The majority opinion seeks to escape from the liability which I think was imposed by the bond, by citing cases growing out of illegal assumption of power by public officials. It is said that parties dealing with public officials are charged with knowledge of the limitations of their power, and that they deal with them at their own risk.

That may be true, so long as we confine the principle to cases where a public official has gone beyond the power delegated to him under the Constitution and laws of this State. But this is not such a case. No question exists, or can exist, as to the power of a county court to repair its court house. To do so, is, under the statute, a mandatory duty. Pelfrey, the contractor, was dealing with the court on a matter which was clearly within its power to decide and act and, in my opinion, as between him and the individual members of the county court, he had the right to assume that in their action they would conform to the law. Another rule would have to be applied if he were making a claim against a public fund. *Davis v. County Court,* 38 W. Va. 104, 18 S. E. 373; *Huddleston v. County Court,* 98 W. Va. 706, 128 S. E. 925. The statutes guarding against excessive expenditures would be nullified if recovery could be had against a fiscal body on account of the derelictions of its members in respect thereto.

It is also held in the majority opinion that, in the absence of a statute to the contrary, fraud must precede liability. I am not prepared to accept this theory, but even if it be a correct one, what, except fraud, is the action of a county court in inducing a person to expend money and perform labor, on the faith of an undertaking on its part to pay money which the court knows cannot be met? Such conduct is nothing less than fraudulent inducement on the part of the court to obtain something for nothing. In the case at bar, no provision had been made in the current estimate for court house repairs; there were no funds available for that purpose; the contract price could not be paid out of levies of future years; yet, with knowledge of these facts, the court induced Pelfrey to perform labor and expend money. What the court did amounted to a representation that he, Pelfrey, would be paid for his work. The court knew that he would not and could not be paid. The representation was, therefore, false and fraudulent. I

contend that even under the theory that fraud must be shown, there is liability on the defendants.

It is said that if there was fraud or illegality, Pelfrey participated therein, and his assignee, standing in his shoes, cannot recover. I do not think Pelfrey participated in the illegal action of the county court, in the sense that he is now barred from prosecuting this action. True he was a party to the agreement under which he performed the work in question, and accepted the county order on which this action is based. But fraud implies knowledge, and what knowledge did Pelfrey have that the county court did not, at the date of his contract, then, or potentially within the current fiscal year, have available funds to pay for the work contracted for. An examination of the estimate might have disclosed that no allocation had been made for that work, and that available revenues had been allocated to other purposes; but it would not have disclosed whether funds so allocated had or would be expended, and whether something might be left available for other purposes. A county court, within limits, may transfer funds allocated for one purpose to another. *County Court* v. *Phillips*, 121 W. Va. 438, 4 S. E. 2d 425. Only a complete audit of the county fund could have disclosed the true state of the fund at any particular time. At the date of the contract, and at any early date in the fiscal year, it would have been impossible for Pelfrey to know whether his contract could be met from funds available within the fiscal year. This being true, are we justified in holding that a citizen, dealing with a county court, or other fiscal body, is charged with knowledge of the exact balance in a fund at the time when he makes a contract? Should we hold that if he relies upon the supposition that such court, or other fiscal body, will comply with the law, he does so at his peril, and if mistaken he becomes associated with such body in illegality and fraud? I do not think so. The county court was, of. course, charged with knowledge of facts which made its contract with Pelfrey illegal

and void; but I do not think Pelfrey was, and I do not think the case of *Doss* v. *O'Toole,* 80 W. Va. 46, 92 S. E. 139, so holds. The ruling of the majority makes any contract with a public fiscal body unsafe, without a complete audit of the public fund involved; and not even then can anyone be certain that any fund is sufficient to cover the obligations against it. I would place the obligation to keep expenditures within proper bounds squarely upon the fiscal body having control of the funds, for the reason that it has available means of ascertaining exactly what expenditures can be lawfully made. I would not impose that duty upon an innocent party who is entitled to contract with such fiscal body, within the limits of its legal powers, on the assumption that the laws will be obeyed.

It is clear that the county order on which plaintiff's action is based, was illegally issued and the contract on which the order was issued is illegal and void. We need go no further than cite Sections 25 to 30, inclusive, of Article 8, Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, Michie's Code, 1943, 11-8-25-30, inclusive. These sections read:

"Sec. 25. Boards or officers expending funds derived from the levying of taxes shall expend the funds only for the purposes for which they were raised.

"Sec. 26. A local fiscal body shall not expend money or incur obligations:
(1) In an unauthorized manner;
(2) For an unauthorized purpose;
(3) In excess of the amount allocated to the fund in the levy order;
(4) In excess of the funds available for current expenses.

"Sec. 27. Any indebtedness created, contract made, or order or draft issued in violation of sections twenty-five and/or twenty-six of this article shall be void.

"Sec. 28. Whenever a fiscal body expends money or incurs obligations in violation of sections twenty-five and/or twenty-six of this article, suit shall be instituted by the prosecuting attorney of the county, or the attorney general of the state, in a court of competent jurisdiction to recover the money expended or to cancel the obligation, or both.

"Sec. 29. A person who in his official capacity wilfully participates in the violation of sections twenty-five and/or twenty-six of this article shall be personally liable, jointly and severally, for the amount illegally expended.

"Sec. 30. A person who in his official capacity wilfully participates in an illegal expenditure may be proceeded against for the recovery of the amount illegally expended. The political subdivision concerned, a taxpayer of the subdivision, the state tax commissioner or a person prejudiced may bring the proceeding.

"All moneys recovered in these proceedings shall be paid into the treasury of the proper fiscal body and credited to the proper fund.

"If the plaintiff prevail, he shall recover against the defendant, the costs of the proceedings, including a reasonable attorney's fee to be fixed by the trial court and included in the taxation of costs."

The expenditure of money in the repair of the court house was not provided for in the 1940 fiscal year estimate, and the funds to be derived from the levies of that year were set aside and designated for other purposes. Therefore, the use of such funds for court house repairs was a use thereof for purposes other than those for which they were raised, in violation of Section 25, and was an expenditure made for an unauthorized purpose, and in an unauthorized manner, and one in excess of the amount allocated to the fund in the levy order, and in excess of the funds available for that or any other current expenses, all in violation of Section 26, unless

the case were one where, by reason of failure to make expenditures contemplated in the estimate, there could be a proper transfer to some other purpose under the principle laid down in *County Court* v. *Phillips, supra.* By the provisions of Section 27, the contract made by the county court, and the county order issued in settlement of the work performed thereunder, are declared to be void. Section 28 authorizes the prosecuting attorney of the county or the attorney general of the state to institute suits to recover money expended, or to cancel any obligation created by any violation of Sections 26 and 27. Presumably this means a suit against any person who has received money or has obtained a contract through such violation. Section 29 provides that a person who, in his official capacity, wilfully participates in the violation of Section 25 or 26, shall be personally liable, jointly and severally, for the amount illegally expended. This creates the personal liability of an official, but confines that liability to amounts "illegally expended". Section 30 provides the manner in which liability, created by Section 29, may be enforced; and that is by a proceeding for the recovery of the amount illegally expended, and it is provided that the political subdivision concerned, a taxpayer of the subdivision, the state tax commissioner, or a person prejudiced may bring the proceeding. Then follows the provision that the recovery shall be paid into the treasury of the fiscal body and credited to the proper fund.

Under these statutory provisions, had the illegal county order been paid, an action, suit or proceeding to recover the amount thereof could have been maintained, and in event of recovery, the amount thereof would have gone into the treasury of the proper fiscal body. In this case, the order not having been paid, no county fund money was expended, and the county court could not have recovered anything by reason of the alleged contract and county order under consideration, because it was in no way prejudiced. But Section 30 provides, that "a

person prejudiced may bring the proceeding". It may be said that a taxpayer may be "a person prejudiced", but the section mentions a taxpayer of the subdivision as one who may bring the proceeding, and we assume that "a person prejudiced" is one who has suffered prejudice, other than as a taxpayer, from the illegal conduct of public officials against whom the proceeding may be maintained. When we get to this point, we are met with the provision that recovery, if any, must be paid into the treasury of the proper fiscal body, and the question naturally arises, of what avail to "a prejudiced person" is a recovery, if the same is paid into the treasury of some fiscal body? The obvious answer is none, unless it can be held that, where such recovery is paid into such treasury, it may properly be used to liquidate, to the extent thereof, the claim of the party who has been prejudiced, and whose proceeding has brought about the recovery and subsequent payment into the fund. There is no statutory authority for such procedure, but it would be eminently just. The county court not having expended any of its funds, to allow the recovery to augment the fund in its treasury would be a species of "unjust enrichment", having no support in either law or morals, especially where the money involved had been expended in the repair of public buildings, beneficial to the citizens of the county. Such a procedure would allow the county to profit to the extent of improving its court house at a cost of $2,250.00, and the addition of that sum, with interest for more than three years, to its treasury. If this action is maintainable by plaintiff on statutory grounds, I do not think the provision requiring payment of the recovery into what would in this case be the county treasury, calls for a holding that the action cannot be maintained by an individual who has been prejudiced by the illegal conduct of the officials against whom recovery may be had.

Much is made of the statutory provision that creates liability on members of fiscal bodies for money "illegally

expended." It is stated that no money of the County Court of Lincoln County was ever expended, and this is true. But the court house was repaired, and the expenditure of money was required therefor. It happens that Pelfrey's money was expended, and that he cannot collect his expenditures from Lincoln County. I think the majority opinion places too narrow a construction upon the phrase "illegally expended". It wholly ignores the provision in the statute for the benefit of "a person prejudiced". A person might be prejudiced by reason of being a taxpayer, and he is given the right to sue as such; but ordinarily one who is prejudiced is one who has been induced to expend money, time or labor, or otherwise suffered a loss. It is unthinkable that the statute was ever intended to mean that recovery could only be had for the illegal expenditure of public funds. Individual rights are entitled to protection. I think it means that any person who expends money on the faith of contracts of a fiscal body which that body had the power to make, but which power was exercised in violation of law, and in breach of official bonds, may recover for the wrong done him, even though such recovery is required to be paid into the treasury of the proper fiscal body. As stated above, that provision does not, in my opinion, destroy the right of "a person prejudiced" to maintain a proceeding to collect money expended by him in the circumstances developed in this case. What may be done with any recovery is a question not now before us.

A study of the evolution of the statute law of this State, relating to penalties and civil liability against individual members of fiscal bodies for law violation, does not lead me to conclude that there has been any legislative intent to lighten such penalties and liability, where there has been wilful violation of the law. It is quite true, as stated in the majority opinion, that as the law was before the legislative enactments beginning with Chapter 38, Acts of the Legislature, Regular Session,

1933, there was provision imposing liability upon the members of any fiscal body who should "incur any debt or obligation, or make or participate in the making of any such contract, or be a party thereto in any official capacity, or issue or cause to be issued any certificate, order or other evidence of indebtedness", and this particular language does not appear in the statute as it now exists. But Section 29 of Chapter 67, aforesaid, provides that a person who participates in the violation of Sections 25 and 26 of said chapter, shall be personally liable; and when we look at Sections 25 and 26 we find that they refer to the expenditure of public funds, and that they prohibit the expenditure of money, or the incurring of obligations, which necessarily means that they shall make no contract therefor. The change in the phraseology of the statute means nothing, if the purpose is maintained. I think, therefore, that the present statute has in no sense weakened the inhibition which the Legislature manifestly intended to provide against illegal expenditures.

As I read and interpret the majority opinion, it holds that there can be no liability imposed upon a county court or other fiscal body, under any contract, however unlawful it may be, where there has been no expenditure of public funds, unless it be where one has been fraudulently induced to make a contract; and that this conclusion is reached largely because the statute, as now written, provides only for recovery of money illegally expended, which is construed to mean illegally expended by a fiscal body. If this is the law, then persons dealing with public officials are entirely helpless against any prejudice to them, growing out of violations of law, and the conditions of their official bonds, may, as concerns fiscal matters, be breached with impunity. In my judgment, the official bonds of the members of the County Court of Lincoln County were intended to afford a remedy to those who might be prejudiced by their illegal conduct, in all situations where participation in such illegal conduct, on the part of the person claiming to be prejudiced, does not

clearly appear, and I think the statutes as they now exist were intended to impose such liability. Certain it is, that the present statutes prohibit certain actions by members of fiscal bodies. When these statutes are violated, there is a failure to faithfully discharge the duties of their office, and there is a breach of their official bonds. I think there exists both a common law and statutory remedy therefor, either of which would authorize a judgment in favor of the plaintiff on its present claim, if it is able to establish the same by proof.

I would therefore affirm the ruling of the Circuit Court of Lincoln County.

Judge Lovins authorizes me to state that he concurs herein.